[Civ. No. 21704. First Dist., Div. One. Feb. 18, 1965.]

HELENE HARDIN, Plaintiff and Respondent, v. ANNA F. ELVITSKY, Defendant and Appellant.

Leonard J. R. Davis for Defendant and Appellant.

Ernest E. Emmons, Jr., and Thomas S. Harte for Plaintiff and Respondent.

MOLINARI, J.—In this action for damages for personal injuries allegedly sustained by plaintiff as a result of a fall on a stairway on defendant's premises, defendant appeals from the judgment entered after a jury verdict awarding plaintiff damages in the amount of $1,000, from the order denying defendant's motion for a judgment notwithstanding the verdict,[1] and from the order granting plaintiff's motion for a new trial on the sole ground of inadequacy of damages.[2] In her brief defendant states that she is also appealing from the order allowing costs. Both parties have argued the propriety of this order in their respective briefs. The record discloses that no appeal was taken from this order. Since the judgment rendered in the instant case was one which could have been rendered in a court of inferior jurisdiction, plaintiff was not entitled to costs unless the trial judge in his discretion so ordered. (Code Civ. Proc., § 1032, subd. (d); *Sweet* v. *Johnson,* 169 Cal.App.2d 630, 633-634 [337 P.2d 499].) The order for costs in the instant case was made pursuant to a motion made after the judgment. Accordingly, it was a special order after judgment and as such was appealable. (Code Civ. Proc., § 963, subd. 2; see *Smallpage* v. *Turlock Irrigation Dist.,* 26 Cal.App.2d 538, 541 [79 P.2d 752]; *Oak Grove School Dist.* v. *City Title Ins. Co.,* 217 Cal.App.2d 678, 710-711 [32 Cal.Rptr. 288].) Since the notice of appeal limits the power of the reviewing court, an order from which an appeal has not been taken will not be reviewed.

---

[1]An appeal may be taken from an order denying a motion for a judgment notwithstanding the verdict. (Code Civ. Proc., § 963, subd. 2; *Taylor* v. *Hawkinson,* 47 Cal.2d 893, 895 [306 P.2d 797].)

[2]This ground of appeal was not supported by any argument or authorities in defendant's brief. At oral argument counsel for defendant stated that he was abandoning his ground of appeal that the trial court erred in granting a new trial upon the sole ground of the inadequacy of the damages. Accordingly, we need not consider this assignment of error on this appeal.

(*Smith* v. *Halstead*, 88 Cal.App.2d 638, 640 [199 P.2d 379] ; *Palomar Refining Co.* v. *Prentice*, 47 Cal.App.2d 572, 574 [118 P.2d 322] ; *Richards* v. *Flower*, 193 Cal.App.2d 233, 238 [14 Cal.Rptr. 228].) In the light of these principles, therefore, the propriety of the order allowing costs cannot be reviewed. Although not controlling here, it may be observed that insofar as disclosed by defendant's brief there is no merit to the claim of error in this respect since defendant points to nothing in the record from which we could determine that the trial judge acted in abuse of his discretion in awarding plaintiff costs.

The assignment of error and the issues for determination on this appeal are, accordingly, narrowed to the following: That the trial court erred in giving certain instructions, in refusing to give certain instructions requested by defendant, and in denying defendant's motions for a judgment notwithstanding the verdict and for a new trial.[3]

### The Record

On the evening of December 31, 1960, at about 6 p.m., plaintiff went to premises, consisting of a duplex dwelling owned by defendant in Calistoga, California, to visit a Mrs. Chelepova, who resided in one of the duplexes. Plaintiff testified that the purpose of her visit was to give Mrs. Chelepova a shawl in return for the latter's gift of some wine to plaintiff's husband, and to order a 50 cent quart bottle of wine from Mrs. Chelepova. When plaintiff arrived at the premises it was not yet dark. She entered the duplex on the south side by means of stairs, exterior to the dwelling, leading to the kitchen door. These stairs consisted of two concrete steps and a bottom step consisting of a wooden box with two boards nailed thereon. There was no lighting on the stairway, nor did the stairway have a handrail. When plaintiff left the duplex about an hour later she did so by way of these same stairs. It was then dark outside, and the only illumination upon the stairs was that provided by the light from the kitchen through the open doorway. As plaintiff stepped down upon the temporary step, the board gave way under her footing and she fell, allegedly injuring her back and side, aggravating a preexisting arthritic condition, and suffering fright and shock.

The duplex dwelling had been built by defendant in 1953.

---

[3]While no appeal lies from the trial court's denial of defendant's motion for new trial, that ruling may be reviewed through an appeal from the judgment. (*Hamasaki* v. *Flotho*, 39 Cal.2d 602, 608 [248 P.2d 910]; *Neyens* v. *Sellnow*, 202 Cal.App.2d 745, 746 [21 Cal.Rptr. 151].)

Mrs. Chelepova, who was the sole and exclusive occupant of the property at the time of plaintiff's accident, had lived in the duplex for approximately nine years prior to that time. During the first four or five of those years, the second unit of the dwelling had also been occupied—first, by defendant's mother for approximately four years and then by a Mr. Tarantiev for a short period of time. Mrs. Chelepova's tenancy was not pursuant to any written lease and, according to the testimony of defendant, the amount of rent which Mrs. Chelepova paid throughout her tenancy up to the year before the trial was $25 or $35 a month, including utilities. Defendant further testified that she utilized the services of Mrs. Chelepova as watchman and agent, stating: "That is why she lived there so cheaply. . . ." Defendant also testified that Mrs. Chelepova, under instructions from defendant, made the arrangements for the care of the grass, and that defendant then paid the person who performed the services directly.

Defendant's testimony as to her knowledge of the condition of the stairway is conflicting: At the trial she testified that she lacked any knowledge of the temporary step; however, in her deposition, which was read at the trial, she testified that she was aware of the condition of the stairway, had used the stairway in question when she visited the property, and had intended to construct a permanent third step.

### The Instructions

Defendant claims that the court erred in the giving of seven of plaintiff's instructions, and in its refusal to give four submitted by defendant. With respect to the instructions given, defendant makes no claim that they are not correct expositions of the principles enunciated, but asserts that they are not applicable to the facts of the instant case.

The thrust of defendant's claim of error with respect to the instructions given is directed to plaintiff's instructions No. 20[4]

---

[4]Instruction No. 20 reads as follows:

"You are instructed that there was in effect at the time of the accident here in question certain Safety Orders of the Division of Industrial Safety of the State of California, relating to the standard specifications and general physical condition and structure of stairways and hand rails. Those that are applicable to the case herein are as follows:

"'3232. Stairways. Every five stairs having four or more risers shall be equipped with standard hand rails. The hand rails and stair railings shall not terminate short of the vertical plane of the terminal riser at the top of the flight of each flight of stairs but may terminate at any point between the first and second riser at the bottom of each flight of stairs, and in any series of flights there shall be a standard hand

and No. 22.[5] These instructions, in essence, advised the jury that there was in effect at the time of the accident in question certain safety orders of the Division of Industrial Safety of the State of California relating to stairways and handrails, and that if defendant violated such safety orders a presumption arose that she was negligent. With respect to the effect of the presumption, the jury was also instructed that it was not conclusive but could be overcome by other evidence showing that, under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.

Before proceeding to discuss the propriety of this instruction it would be well to consider the theory upon which plaintiff based her cause of action. Neither the complaint nor the pretrial order indicate with clarity or exactness the theory upon which plaintiff sought recovery. The allegations of the

railing or standard stair railing protection or equivalent regardless of the number of risers in each flight.

" 'Stairways less than 44 inches wide having both sides open shall be equipped with one standard stair railing on each side.

" 'No stairway shall be less than 22 inches wide.

" '3227. The vertical height of hand rails above the tread nosing in line with the base of the riser shall be not more than 34 inches nor less than 30 inches.

" 'Hand rails and hand rail mountings shall be such that the completed structure is capable of withstanding a load of at least 20 pounds per linear foot applied at any point on the rail.' "

And section 3234:

" 'The difference in the height of any two risers or in the width of any two treads in each straight-run flight of stairs shall not exceed one-half inch.

" 'The sum of the tread and the riser shall be approximately 17½ inches. Stair tread depth measurement does not include the nosing.

" 'Section 3235. Doors shall not open directly onto a flight of stairs or over a ladder-way opening but onto a landing who [sic] length is at least equal to the width of the door. In existing installations which are in violation of this order doors shall be conspicuously marked with a sign "Danger! Stairways—No Landing" or equivalent wording, and there shall be adequate illumination on all such installations.' "

[5]Plaintiff's instruction No. 22 was given as follows:

"If a party to this action violated the Safety Orders just read to you, a presumption arises that he was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.

"To prove that a violation of a Safety Order such as that charged in this case was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the person who violated the Safety Order did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances."

complaint and plaintiff's contentions as disclosed by the pretrial order are that plaintiff visited a tenant in a duplex owned by defendant and that as she was leaving the premises she fell on stairs which were negligently installed and maintained by defendant. Accordingly, when the cause proceeded to trial in this posture, plaintiff's apparent theory of recovery was that defendant, the owner and lessor of the duplex had retained control over the stairway on which plaintiff was allegedly injured, and that on that basis plaintiff was an invitee of defendant.

It is the general rule that, in the absence of fraud or deceit on the part of the landlord in concealing latent defects of which he has knowledge, and in the absence of a direct covenant to make repairs, the landlord is not liable for injuries to the person or property of the tenant or his invitees or employees caused by defects in the leased premises. (*Pfingst* v. *Mayer*, 93 Cal.App.2d 265, 275 [208 P.2d 1002]; *Harris* v. *Joffe*, 28 Cal.2d 418, 423 [170 P.2d 454]; *Neuber* v. *Royal Realty Co.*, 86 Cal.App.2d 596, 610-611 [195 P.2d 501]; *Shotwell* v. *Bloom*, 60 Cal.App.2d 303, 309-310 [140 P.2d 728].) This general rule is subject to the exception stated in *Johnston* v. *De La Guerra Properties, Inc.*, 28 Cal.2d 394, 399 [170 P.2d 5], as follows: ''One who leases a part of the premises, retaining control of other portions such as common walks or passages which the tenant is entitled to use, is subject to liability to persons lawfully on the land with the consent of the tenant for damages caused by a dangerous condition existing on the part under the owner's control, if by reasonable care he could have discovered the condition and made it safe. [Citations.] ██ Accordingly, invitees of the tenant are regarded as being invitees of the owner while on passageways which invitees of the tenant have a right to use and which are under the owner's control. [Citations.]'' (See *Harris* v. *Joffe, supra*, p. 423; *Pfingst* v. *Mayer, supra*, p. 272.)

We are satisfied from a consideration of the allegations of the complaint, the contentions set forth in the pretrial order, and the evidence adduced at the trial that plaintiff was not asserting or claiming that defendant fraudulently concealed latent defects of which she had knowledge, or that she covenanted to make repairs upon the demised premises. It appears, however, that plaintiff was relying upon the exception to the general rule occurring when the injury is suffered on a portion of the premises over which the landlord has retained control. The important issue at the trial, therefore, was whether

defendant retained control of the stairs in question. If defendant retained such control, plaintiff was, as to defendant an invitee. If defendant did not retain such control, eliminating consideration of safety rule violations, to which we shall later give consideration, there was no breach of any common law duty owed by defendant to plaintiff.

In the present case the trial court properly concluded that plaintiff's said theory found support in the evidence. Accordingly, the trial judge gave instructions on the duty owing by a landlord to a tenant's guest or invitee injured while lawfully on premises reserved for common use and over which the landlord retained control. The court also gave instructions defining invitee and licensee and the duties owing to each. ▉ The instructions on the invitee-invitor relationship, insofar as they applied to the relationship between plaintiff and the tenant, were unnecessary since defendant's liability for injuries to plaintiff on premises over which defendant retained control would exist whether plaintiff was the tenant's invitee or licensee; in either case plaintiff was, as to the landlord, an invitee. ▉ Furthermore, the instructions defining a licensee and the duties owed him by a licensor,[6] submitted by defendant and given by the court, although favorable to defendant, were not proper, since the relationship of licensor and licensee does not exist as between a landlord and his tenant's invitee or social guest, whether the landlord has retained or relinquished control over the premises where the injury occurs. ▉ If the landlord has retained control the visitor is the landlord's invitee, irrespective of whether the visit is for the visitor's or the tenant's business purpose, or whether the visitor comes as a mere social guest or other gratuitous licensee of the tenant. (See *Yazzolino* v. *Jones*, 153 Cal.App.2d 626, 636-637 [315 P.2d 107].) ▉ On the other hand, if the landlord has relinquished control over the rented premises, the landlord owes no duty to the visitor and is not liable to him for injuries suffered upon such demised premises, in the absence of fraud, concealment, or covenant to repair, since the visitor is not, as to the landlord, a licensee. ▉ A "licensee" is a person who is privileged to enter upon the land by virtue of the pos-

---

[6] In these instructions the trial court instructed the jury that a licensee "assumes the risks incident to the condition of the premises and the activities regularly carried on there." It also instructed that "A mere social guest is not an invitee. Such a person is regarded in law as being only a licensee."

sessor's consent or permission, usually for purposes of his own, having no relation to the business of the owner or occupant. (*Miller* v. *Desilu Productions, Inc.*, 204 Cal.App.2d 160, 163-164 [22 Cal.Rptr. 36]; 2 Witkin, Summary of Cal. Law (7th ed. 1960) § 252, p. 1448; Prosser on Torts (2d ed. 1955) § 77, p. 445.) ▮ In the light of the definition of a "licensee" it is apparent that a landlord who has relinquished all control over the demised premises is no longer a possessor of land who may give permission or consent to enter upon such premises.

▮ Evidence was also adduced at the trial tending to show that the duplex in question was a "place of employment" within the meaning of Labor Code section 6302[7] which defines "place of employment" as "any place, and the premises appurtenant thereto, where employment is carried on. . . ." This evidence consisted of defendant's testimony that the tenant, Chelepova, performed services as a watchman on and at said premises for defendant, and as compensation for such services, received a reduction in rent. Evidence was also adduced as to the number of risers on the stairway and their height; the number of steps on the stairway; the width of the steps; the absence of handrails; the absence of a landing at the door opening; and the absence of illumination except such as emanated when the door was opened. Photographs of the stairway were also introduced in evidence. This evidence was such, that if the subject safety rules were applicable, defendant violated them.

If the premises upon which the accident in the present case occurred constituted a "place of employment" then the subject safety rules come into play. In such a situation liability to the plaintiff is predicated upon the higher duty based upon the violation of a statutory duty imposed upon the owner by the safety regulations inuring to the benefit of the plaintiff who, as a member of the general public, is one of the class of persons whom such regulations were intended to protect, rather than upon a breach of the common law duty existing between an ordinary invitor and invitee. (*Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal.App.2d 575, 587 [298 P.2d 700]; see *Longway* v. *McCall*, 181 Cal.App.2d 723, 734 [5 Cal.Rptr. 818].)

It is thus apparent that the giving of an instruction upon the applicability of the subject safety rules was of consider-

---

[7]Unless otherwise indicated, all statutory references hereinafter made are to the Labor Code.

able importance in the instant case. ▮ If the jury found that the subject premises constituted a "place of employment" to which the subject safety rules applied, it was not incumbent upon them to consider whether there was a breach of the lesser duty existing between an ordinary invitor and invitee. On the other hand, if a place of employment was found not to exist, it would be incumbent upon the jury to determine whether plaintiff was an invitee as to the landlord, and whether a duty owing to such person was breached by defendant.

The subject safety orders are set out in title 8 of the California Administrative Code. Sections 3200 and 3202 of this title set out the purposes and application of the ensuing regulations which include the sections (3227, 3232, 3234, and 3235) referred to in plaintiff's instruction No. 20. Section 3200 provides that these orders are promulgated "to make full provision for securing safety in *places of employment*. . . ." (Italics added.) Section 3202, entitled "Application," reads as follows: "Application of these orders. These orders establish minimum standards and apply to all employments and places of employment in California as defined by Labor Code Sections 6302 and 6303; . . ."

We have heretofore set out the definition of "place of employment" as it is defined in section 6302. Section 6303, insofar as pertinent here, defines "Employment" as including "the carrying on of any trade, enterprise, project, industry, business, occupation or work, including all excavation, demolition and construction work, or any process or operation in any way related thereto, in which any person is engaged or permitted to work for hire except household domestic service." We set forth, in addition, the Labor Code definitions of employer and employee since they are interrelated with those of "employment." Sections 6304 and 6305, respectively, define these terms as follows: " 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee."[8] " 'Employee' means every person who is required or directed by any employer, to engage in any employment, or to go to work or be at any time in any place of employment."

---

[8] § 3300 defines the persons and entities encompassed within the meaning of "employer," and, insofar as pertinent here, as "Every person . . . which has any natural person in service."

In *Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846 [313 P.2d 854], the plaintiff business invitee recovered damages for injuries sustained when she fell on a stairway in the defendant's department store. On appeal it was held that the plaintiff was entitled to the benefits of a Division of Industrial Safety order requiring center railings on stairways of certain widths and that the trial court properly received such safety order in evidence. The Supreme Court also approved the giving of an instruction that the violation of such order gave rise to a presumption of negligence which could be rebutted by evidence of justification or excuse. In holding that the plaintiff was a member of the class for whose protection the order was designed the reviewing court stated as follows: "Some safety orders, such as those regulating machinery, might be regarded as peculiarly designed to protect employees when applied to places of employment which the public is prohibited from entering. An entirely different situation, however, is presented where, as here, a person is a business invitee in a department store and is using a stairway which the store provides for persons in her position as well as for employees." (P. 849.) Similarly, in *Lehmann* v. *Los Angeles City Board of Education,* 154 Cal.App.2d 256 [316 P.2d 55], the appellate court held that a student whose hand was caught in a printing press in the workshop of a junior high school was a person entitled to the benefit of the regulations of the Division of Industrial Safety with respect to a safety device. The court, relying upon the *Porter* decision, declared, that such safety regulations are not for the exclusive benefit of employees, but are intended to afford protection to the general public in places of employment.

In the light of the foregoing principles, the court would have been justified in instructing the jury with respect to the applicable safety orders provided that the subject premises constituted a "place of employment" and that defendant was an "employer" within the meaning of those terms as they are defined in the Labor Code since the subject theory of liability is predicated upon the existence of these factors. (See *Johnson* v. *A. Schilling & Co.,* 170 Cal.App.2d 318, 322 [339 P.2d 139]; *Dauer* v. *Aerojet General Corp.,* 224 Cal.App.2d 175, 180-181 [36 Cal.Rptr. 356]; *Woolen* v. *Aerojet General Corp.,* 57 Cal.2d 407, 412-413 [20 Cal.Rptr. 12, 369 P.2d 708].) No instructions were given, and apparently none were offered by plaintiff in the instant case defining these terms and advising the jury that the subject safety

orders were applicable only if they found that there was such a "place of employment" and that defendant landlord was such an "employer." Nor were any instructions requested by plaintiff or given by the court with respect to the meaning of "employment" and "employee" as those terms are defined in the Labor Code. The instructions given by the trial judge merely advised the jury that if defendant landlord violated any of the safety orders set out in the court's instructions a presumption of negligence arose which could be rebutted by evidence of justification or excuse.

Although a party is entitled to have his theory of the case submitted to the jury in accordance with the evidence and the court must, when requested, instruct on all the vital issues involved (*Davis* v. *Erickson,* 53 Cal.2d 860, 863 [3 Cal. Rptr. 567, 350 P.2d 535]; *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [255 P.2d 785]; *Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 633 [255 P.2d 795]), the trial court is not required to, nor should it on its own motion, give instructions which are not correct statements of the law (*Rutherford* v. *Standard Engineering Corp.,* 88 Cal. App.2d 554, 563 [199 P.2d 354]; *Rangel* v. *Badolato,* 133 Cal.App.2d 254, 261 [284 P.2d 138]), or are incomplete or misleading (see *Alvarez* v. *Felker Mfg. Co.,* 230 Cal.App.2d 987, 1001 [41 Cal.Rptr. 514]; *Costa* v. *A. S. Upson Co.,* 215 Cal.App.2d 185, 190 [30 Cal.Rptr. 66]; *Korakakis* v. *Freeman,* 178 Cal.App.2d 331, 335 [2 Cal.Rptr. 802]; *Pobor* v. *Western Pac. R. R. Co.,* 55 Cal.2d 314, 324 [11 Cal.Rptr. 106, 359 P.2d 474]; *Perry* v. *Schwartz,* 219 Cal.App.2d 825, 829 [33 Cal.Rptr. 511]).

In the instant case the trial court was not required to give the subject instructions since they were incomplete and misleading. Having undertaken to instruct with respect to plaintiff's theory that the subject premises constituted a "place of employment," it was incumbent upon the trial court to give instructions on all the vital issues attendant to such theory so that the jury would have a full and complete understanding of the law applicable to the facts, and of the controlling legal principles applicable to the case. (*Distefano* v. *Hall,* 218 Cal.App.2d 657, 672 [32 Cal.Rptr. 770]; *Jaeger* v. *Chapman,* 95 Cal.App.2d 520, 525 [213 P.2d 404].)

To justify the giving of the subject instructions in the form in which they were couched requires the conclusion that as a matter of law the premises constituted a place of employment so as to make it unnecessary to delineate the predicates

requisite to establish such fact. In order to establish a fact as a matter of law the state of the evidence must be such that no other conclusion is legally deducible therefrom. (*Pope* v. *County of Riverside*, 219 Cal.App.2d 649, 651 [33 Cal.Rptr. 491]; *McBride* v. *Atchison, Topeka & S. F. Ry. Co.*, 44 Cal.2d 113, 116 [279 P.2d 966]; *Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 183 [258 P.2d 834].) "Where the evidence relied upon to establish a fact conflicts with other evidence, bears conflicting interpretations, may be the basis for conflicting inferences, or may be disbelieved because, although without conflict, there is a rational ground for doing so, the issue presented may not be determined as a matter of law. [Citations.]" (*Pope* v. *County of Riverside, supra,* pp. 651-652.) These principles have been applied in situations where the question presented was whether one was an employee or independent contractor. (See *Burlingham* v. *Gray*, 22 Cal.2d 87, 100 [137 P.2d 9]; *Robinson* v. *George*, 16 Cal.2d 238, 242-243 [105 P.2d 914]; *Esquer* v. *Teresi*, 105 Cal.App.2d 89, 93 [232 P.2d 895]; *Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com.*, 55 Cal.App.2d 234, 238 [130 P.2d 146].) These cases hold, in essence, that if from all the facts only a single inference and one conclusion may be drawn, the question of whether one is an employee or independent contractor is one of law, but if from all of the circumstances either conclusion may be reasonably reached, the issue becomes one for the trier of facts to determine. (*Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com., supra,* p. 238; *Burlingham* v. *Gray, supra,* p. 100.) In *Robinson,* it was held that where the arrangements between an employer and employee are entirely oral a determination as to the relationship of these parties is within the province of the jury. (Citing *Fechtner* v. *Costa*, 16 Cal.App.2d 691 [61 P.2d 473].) The determination of whether the status of an employee or that of an independent contractor exists is governed primarily by the right of control which rests in the employer, rather than by his actual exercise of control; and where no express agreement is shown as to the right of the claimed employer to control the mode and manner of doing the work, the existence or nonexistence of the right must be determined by reasonable inferences drawn from the circumstances shown, and is a question for the jury. (*Burlingham* v. *Gray, supra,* pp. 99-100.) Turning to the facts of the instant case, we are satisfied it cannot be said the state of the evidence is such that the only conclusion legally deducible therefrom is that

the duplex was a place of employment; that defendant was an employer; and that the tenant, Chelepova, was an employee. The paucity of evidence with respect to the tenant's duties and responsibilities affords a rational ground for concluding that an employment within the meaning of the Labor Code definition did not exist. Moreover, the evidence is susceptible of the inference that defendant did not exercise any right of control over the tenant and that accordingly Chelepova was an independent contractor. In sum, the state of evidence is not such that reasonable men can draw but one inference, but is such that an inference may be drawn both for and against a finding that an employment was carried on at the duplex premises so as to make it a place of employment.

Although an employer-employee relationship in the usual sense is not essential for the application of the Labor Code (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407, 412; *Porter* v. *Montgomery Ward & Co., Inc., supra,* 48 Cal.2d 846, 847-849; *Johnson* v. *A. Schilling & Co., supra,* 170 Cal. App.2d 318, 322; *Lokey* v. *Pine Mountain Lbr. Co.,* 205 Cal. App.2d 522, 531-532 [23 Cal.Rptr. 293]), an "employer" must be one who comes within the definition of section 6304, i.e., a person "having direction, management, control, or custody of any employment, place of employment, or any employee." (*Woolen* v. *Aerojet General Corp., supra,* p. 412.) In *Woolen,* for example, it was held that the owner of premises who does nothing more with respect to the work of an independent contractor than exercise general supervision and control to bring about its satisfactory completion is not an employer within the meaning of the Labor Code and that therefore it was not his responsibility to assure compliance with all applicable safety provisions. Since it was plaintiff's theory in the instant case that defendant was an "employer," carrying on an "employment" at and upon the duplex, and that the tenant, Chelepova, was an "employee," within the definition of the Labor Code, the jury should have been instructed with respect to the meaning of these terms, and that the subject safety orders were not applicable unless defendant was such an employer carrying on such an employment at such a place of employment. The failure to so instruct constituted prejudicial error.

In view of our determination that the instant case must be retried, we need not dwell upon the other instructions given by the court which defendant claims were prejudicial to her. With one exception, namely plaintiff's instruction No. 1,

the single ground of error asserted is that each is unsupported by any evidence under any theory of the case.[9] No claim is made that such instructions are not correct statements of the legal principles they enunciate. Dealing, as they do, with the definition of an invitee, the subject of retention of control of premises by a landlord, the element of a landlord's knowledge of a dangerous and defective condition, and the liability of the master for the acts of his servant, the instructions found support in the evidence in the present case.

With respect to plaintiff's instruction No. 1, which stated that ''The mere fact that plaintiff was injured in an accident constitutes no evidence whatsoever that she was negligent,'' we find no merit in the contention that it is slanted in favor of plaintiff because the instruction, which is an adaptation of BAJI No. 131, uses the word ''she'' instead of ''any party.'' Each party is, of course, entitled to an instruction that the jury is not to infer a party was negligent from the mere happening of the accident. (*Miller* v. *Cranston*, 41 Cal.App.2d 470, 476 [106 P.2d 963].) In *Miller*, a similar instruction requested by the defendant, negativing the defendant's negligence, was held not to be error, because a balancing instruction negativing the plaintiff's negligence was not given. In that case such a balancing instruction was not requested by the plaintiff. In the present case defendant did not request such an instruction; accordingly, she cannot be heard to complain. (See *Crooks* v. *White*, 107 Cal.App. 304, 311 [290 P. 497]; 2 Witkin, Cal. Procedure (1954) Trial, § 52, p. 1780.)

Defendant's contention that the trial court erred in refusing to give certain instructions requested by her is without merit. The first of these reads as follows: ''In the absence of a special warranty or agreement to repair or maintain the tenant assumes all risks arising from damages which are obvious to ordinary observations.'' This instruction is ambiguous, and, therefore, the trial court was justified in refusing to give it. It cannot be ascertained from its language whether its purport is to cover the liability of a landlord to his tenant, in which case it would clearly be inapplicable in the present case; nor can it be determined whether the word ''damages'' means injury and, if so, to whom.

Another of the subject instructions read as follows:

---

[9]These instructions are plaintiff's Nos. 13, 14, 17 and 18, and defendant's instruction, as modified, with respect to control over the premises where plaintiff claimed she fell.

''The mere failure to make repairs after notice or a promise to do so imposes no tort liability on a landlord.'' Although this instruction is a correct statement of an abstract principle of law, it is nevertheless confusing.. Although a landlord is not liable per se for the failure to make repairs after notice of a defective condition, the subject instruction purports to convey the idea that no tort liability can be imposed upon the landlord where he fails to make repairs. The duty imposed upon an owner of property, insofar as an invitee is concerned, is to use reasonable care to keep his premises in a reasonably safe condition, and give warning of latent or concealed perils. (*Brown* v. *San Francisco Ball Club, Inc.*, 99 Cal.App.2d 484, 486 [222 P.2d 19] ; *Nigro* v. *West Foods of California*, 218 Cal.App.2d 567, 573 [32 Cal.Rptr. 692].) Accordingly, the failure to make repairs after notice of a dangerous condition may be vital to the issue of whether the owner used reasonable care to keep his premises in a reasonably safe condition or whether he was required to give warning of the danger.

 The instruction which, in pertinent part, reads ''In the absence of fraud, concealment or a covenant in the lease, a landlady is not liable to a tenant or the tenant's licensee for defective conditions or faulty construction in leased property,'' is a correct statement of a legal principle hereinbefore discussed which is applicable to the situation where, absent consideration of statute, ordinance or safety rule violation, the landlord relinquished all control of the premises. The instruction as submitted, however, was not limited to this situation, but was broad enough to cover the case where the landlord retained control of the premises. Moreover, this instruction should have been subject to the further limitation that it was not applicable if the jury found that the premises constituted a ''place of employment'' to which the subject safety rules applied. We note, moreover, that defendant's instruction given by the court, as modified, unequivocally advised the jury that if they found ''that she did not retain control, then the defendant landlady is not liable to ∴ . . the tenant's licensee or invitee for defective conditions or faulty construction existing upon the premises. . . .'' Absent considerations of violation of the subject safety rules, this instruction was adequate since there was no evidence in the instant case of any fraud, concealment or covenant to repair.

 With respect to the requested instruction on assumption of risk the court did not err, even assuming the facts

warranted the instruction under the general rule,[10] because the instruction submitted was so broad as to instruct that plaintiff assumed the risk of a condition resulting from the violation of the subject safety orders. It is the established rule in California that the doctrine of assumption of risk is inapplicable where the action is based on a violation of a safety law intended to protect a class, of which the plaintiff is a member, against the very risk he is claimed to have assumed. (*Atherley* v. *McDonald, Young & Nelson, Inc.,* supra, 142 Cal.App.2d 575, 587; *Bickham* v. *Southern Cal. Edison Co.,* 120 Cal.App.2d 815, 823-824 [263 P.2d 32]; *Longway* v. *McCall, supra,* 181 Cal.App.2d 723, 732.) This rule has been applied specifically to the safety orders herein involved. (*Maia* v. *Security Lumber & Concrete Co.,* 160 Cal. App.2d 16, 20 [324 P.2d 657].)

 We do not suggest, however, that a trial court is precluded from giving instructions on the doctrine of assumption of risk in every case where the violation of a safety order is involved. The limitation is restricted to the assumption of the risk of a dangerous condition resulting from a violation of a safety regulation enacted for the protection of a plaintiff. It does not extend to the situation where the dangerous condition results from a breach other than the violation of a safety regulation or statute. Thus, in the instant case, the jury might well have found that the subject premises were not a place of employment, in which case the subject safety orders would not apply, but could have found that there was a breach of the common law duty arising out of the invitor-invitee relationship.

In *Atherley,* it was acknowledged that instructions on the assumption of risk are permissible in an invitor-invitee case. Likewise, in *Longway,* the reviewing court recognized that such instructions may be given in an invitor-invitee case even though the action also involves a violation of a statutory duty imposed upon the owner by safety regulations. The appellate court emphasized that the assumption of risk doctrine was not applicable when the condition of the premises is the result of a violation of such statutory duty, but indicated that under applicable correct instructions, properly limited, the jury

---

[10]In the present case assumption of risk was delineated as an issue in the pretrial order. There was evidence that plaintiff had visited the premises on prior occasions; that on the day of the accident she arrived at the premises during daylight and used the same means to enter and leave the premises; and that she used the wooden box as the lowest step in entering and leaving.

could be instructed that the doctrine of assumption of risk was applicable to conditions not the result of such violation, provided, of course, that such an instruction found support in the evidence.

### *Motion for Judgment Notwithstanding the Verdict*

With respect to the propriety of granting a motion for judgment notwithstanding the verdict the applicable rule is set out in *Estate of Green,* 25 Cal.2d 535, 546 [154 P.2d 692], as follows: " 'The right of the trial court to set aside a verdict and enter a contrary judgment is absolutely the same as its right to grant a nonsuit. . . . The Court should, therefore, grant such a motion when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' " (See also *Card* v. *Boms,* 210 Cal. 200, 202 [291 P. 190] ; *Tremeroli* v. *Austin Trailer Equipment Co.,* 102 Cal.App.2d 464, 478 [227 P.2d 923].) Relying upon this rule, defendant contends that when plaintiff rested her case in chief no evidence had been adduced to establish a duty owed by defendant to plaintiff. A review of the record satisfies us that when plaintiff rested her case there was sufficient evidence adduced to support a verdict in her favor upon both the theory of invitor-invitee and violation of safety orders applicable to a "place of employment." The trial court, accordingly, made a proper ruling in denying the motion for a judgment notwithstanding the verdict.

The judgment is reversed; the order denying defendant's motion for a judgment notwithstanding the verdict is affirmed ; and the appeal from the order granting plaintiff's motion for a new trial on the sole ground of the inadequacy of damages is dismissed. Defendant shall recover her costs on appeal.

Sullivan, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.