[Civ. No. 2478. Fifth Dist. Mar. 25, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA EDISON COMPANY,
Defendant and Appellant.

594

**COUNSEL**

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, R. H. Connett and Mark I. Weinberger, Deputy Attorneys General, for Plaintiff and Appellant.

William G. Tucker and Richard A. Vachon for Defendant and Appellant.

**OPINION**

**BROWN (G. A.), P. J.**—After a trial before a jury, the People of the State of California (hereinafter "State") recovered a judgment for

$21,584.19 against Southern California Edison Company (hereinafter "Edison") in an action for fire suppression expenses pursuant to Health and Safety Code sections 13009, 13008 and 13007.[1] Thereafter, the trial court granted Edison's motion for a new trial on the sole ground of jury misconduct. State has appealed from that order, and Edison filed a timely protective cross-appeal from the judgment.

The central issues to be determined are (1) whether the declaration of trial counsel for Edison, submitted in support of the motion for a new trial, was adequate to establish that neither he nor Edison had knowledge of the jury improprieties prior to the return of the verdict, and (2) whether it was reversible error for the trial court to withdraw the determination of the amount of State's damages from the jury by instructing the jury that State's firefighting expenses had been established in the amount of $21,584.19.

### Motion for a New Trial

The fire giving rise to this litigation occurred in rural Tulare County in July 1968 and spread over an approximate 65-acre area. In the suppression of the fire State incurred substantial expenses. One of the contested issues in this suit to collect those expenses from Edison was whether a 12,000-volt powerline owned and operated by Edison came in contact with the upper branches of an oak tree, thereby causing the fire, and, if so, whether Edison was negligent in so maintaining its lines as to permit such contact to occur.

---

[1] At all times relevant herein Health and Safety Code sections 13009, 13007 and 13008 provided:

Section 13009: "The expenses of fighting any fires mentioned in Sections 13007 and 13008 are a charge against any person made liable by those sections for damages caused by such fires. Such charge shall constitute a debt of such person, and is collectible by the person, or by the federal, state, county, or private agency, incurring such expenses in the same manner as in the case of an obligation under a contract, express or implied."

Section 13007: "Any person who personally or through another wilfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire."

Section 13008: "Any person who allows any fire burning upon his property to escape to the property of another, whether privately or publicly owned, without exercising due diligence to control such fire, is liable to the owner of such property for the damages to the property caused by the fire."

Health and Safety Code section 13009 was amended in 1971 to incorporate the substance of sections 13007 and 13008 into that section.

■ In support of its motion for a new trial, Edison submitted the declarations of its trial counsel, William G. Tucker, of a juror, William W. Barnett, and five additional jurors. Barnett's declaration in substance stated that one evening during the course of the trial he went to the store where he was employed to finish up some work. There Barnett met a man he knew to be employed by Edison. In his declaration Barnett stated:

"I felt that I needed to know more about limbs contacting powerlines before going into deliberation. Therefore, I asked this man whether a limb could catch fire when it came in contact with a powerline. The man said that it could.

"During the deliberations in the jury room I orally communicated what this man had told me to the other jurors."

The declarations of the other jurors corroborated Barnett's statement that he communicated the out-of-court information to the jury during its deliberations.

Attorney William G. Tucker's declaration stated in pertinent part:

"I am one of the attorneys of record and trial counsel for the Defendant, Southern California Edison Company in this action.

"As evidenced by the Juror Declarations filed in conjunction with this motion and incorporated herein by reference the following facts came to my attention while the jury was interviewed subsequent to the conclusion of the trial in the case at bar."

There then followed a recitation of the episode related by juror Barnett.

Assuming the declarations are technically sufficient, this showing is patently adequate to support the trial court's order granting a new trial upon the ground of jury misconduct. (Code Civ. Proc., § 657, subd. 2.) However, uninterrupted case authority since at least *Sherwin* v. *Southern Pacific Co.* (1914) 168 Cal. 722, 726 [145 P. 92], imposes the inflexible requirement ". . . that a litigant seeking a new trial on the ground of juror improprieties present affidavits showing that neither he nor his attorney was aware of the misbehavior until after the verdict was returned . . . ." (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 103 [95

Cal.Rptr. 516, 485 P.2d 1132].) The *Weathers* court referred to the rule as being firmly established and long approved in this state. (See *Lindemann* v. *San Joaquin Cotton Oil Co.* (1936) 5 Cal.2d 480, 496 [55 P.2d 870]; *Markaway* v. *Keesling* (1963) 211 Cal.App.2d 607, 611-612 [27 Cal.Rptr. 583]; *Crespo* v. *Cook* (1959) 168 Cal.App.2d 360, 363 [336 P.2d 31]; *Dunford* v. *General Water Heater Corp.* (1957) 150 Cal.App.2d 260, 265-266 [309 P.2d 958]; *Forman* v. *Alexander's Markets* (1956) 138 Cal.App.2d 671, 675 [292 P.2d 257].)

The rationale of the rule was fully explicated in the *Weathers* case: "Its purpose is to prevent a party who, personally or through counsel, has discovered some jury misconduct during the course of the proceedings from gambling on the outcome of the jury's deliberations while secretly preserving the error to be raised on a motion for a new trial in the event of an unfavorable verdict. The rule is well settled that when at any time during trial a party or his counsel becomes aware of facts constituting misconduct or irregularity in the proceedings of the jury, he must promptly bring such matters to the attention of the court, if he desires to object to it, or he will be deemed to have waived the point as a ground for a motion for a new trial. [Citations.] Consequently, the 'no knowledge' affidavit or declaration serves to establish that a party moving for a new trial is not relying on errors which were known to him or his attorney prior to the jury's verdict." (5 Cal.3d at p. 103.)

While *Weathers* held that the "no knowledge" affidavit may be submitted by one person, it did not make any inroad upon the necessity that there be an affidavit affirmatively establishing that *neither* the *attorney nor* the *client* had such knowledge.

Applying these principles to the facts herein, the conclusion is inescapable that at the very most the declaration of Edison's attorney by inference establishes that the attorney did not know of the misconduct until after the verdict. Assuming his declaration is so construed, the requirement that a declaration also establish an absence of knowledge on the part of the client remains unsatisfied. Further, assuming the attorney could make a no knowledge affidavit on behalf of his corporate client (see *Weathers* v. *Kaiser Foundation Hospitals, supra,* 5 Cal.3d at pp. 104-105), in the case at bench no amount of judicial gymnastics in the guise of "construction" can serve to legitimately extend the language of

Mr. Tucker's declaration to the client, Edison.[2] Accordingly, the order granting the motion for a new trial must be reversed.

 Subsequent to the original filing of this opinion, Edison timely filed with this court a "Petition for Rehearing and Motion for Leave to Produce Additional Evidence on Appeal." The request to take additional evidence was made pursuant to Code of Civil Procedure section 909,[3] and in accordance with the procedure set forth in California Rules of Court rule 23(a). The petition was accompanied by four affidavits of officers and employees of Edison tending to show that Edison had no knowledge of the jury misconduct prior to the return of the verdict. We granted the petition for rehearing and the motion to take additional evidence of the issue of whether Edison had knowledge of the jury misconduct prior to the return of the jury verdict.

On the date set for the hearing, oral evidence from the same four affiants who had filed the affidavits was taken by the court. The affidavits were admitted and oral evidence was taken subject to the objections of the State.

*Crespo* v. *Cook, supra,* 168 Cal.App.2d 360 is a case remarkably similar to the case at bench.[4] In *Crespo,* the court granted a motion for a new trial on the ground of irregularity in the proceedings of the jury and

---

[2]Lack of such knowledge takes on particular significance in this case because the offending juror communicated with a person he knew to be an employee of Edison. Moreover, during the hearing on the motion for a new trial, State pointed out to the trial court and counsel for Edison that a no knowledge affidavit was essential. It is somewhat perplexing that counsel for Edison chose to argue the inapplicability of the requirement to this case rather than simply asking for permission to file an affirmative declaration of no knowledge on the part of his client at that time.

[3]Code of Civil Procedure section 909 provides: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make findings of fact contrary to or in addition to those made by the trial court. Such findings may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making such findings of fact or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make such further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

[4]The precise holding of *Crespo* in this regard was not called to our attention prior to our granting of Edison's petition for rehearing and to receive additional evidence on appeal.

misconduct of the jury. The misconduct complained of consisted of a juror concealing on voir dire her bias and acquaintance with doctors. The court held inter alia that the new trial order must be reversed because no affidavit was filed by plaintiff showing his lack of knowledge of the claimed misconduct before the verdict. The respondent, however, sought to remedy this defect by requesting leave to file evidence in the appellate court in the form of affidavits by the respondent and his counsel. In refusing to consider these affidavits, the appellate court stated: "This novel effort must fail. Motions for new trial upon the grounds here urged must be made on affidavits. (Code Civ. Proc., § 658.) The code specifies the time within which such affidavits must be filed, and specifically limits extension of such time to 20 days. (Code Civ. Proc., § 659a.) Affidavits filed in the trial court after the limited time are not to be considered. [Citations.] Whatever might be our authority to consider such affidavits filed in this court within the time prescribed by the code, we clearly cannot act upon proofs made 17 months after expiration of the time to file such affidavits." (*Crespo* v. *Cook, supra,* 168 Cal.App.2d at p. 363.)[5]

We have concluded that *Crespo* is determinative of this issue in the case at bench.

"It is well established that the proceedings on a motion for new trial are strictly statutory, and the procedure for seeking relief must conform strictly to the statutory mandate." (*Cembrook* v. *Sterling Drug Inc.* (1964) 231 Cal.App.2d 52, 66 [41 Cal.Rptr. 492]; see also *Middleton* v. *Finney* (1931) 214 Cal. 523, 528 [6 P.2d 938, 78 A.L.R. 1104].) The statutory scheme vests the original jurisdiction to entertain a motion for a new trial in the superior courts and municipal courts. (Code Civ. Proc., §§ 655, 656.) No similar authority for entertaining a motion for a new trial in the appellate court can be found in the statutes or the case law. (See *Granger's Bank* v. *San Francisco* (1894) 101 Cal. 198 [35 P. 642].)

The statutory authority for these special proceedings in the trial court is circumscribed by various procedural restrictions and time limitations (see Code Civ. Proc., §§ 657, 658, 659, 659a, 660) which must be strictly complied with. For example, the trial court cannot receive or act upon

---

[5]At the time *Crespo* was decided, the appellate court authority to take additional evidence and make additional findings was contained in former Code of Civil Procedure section 956a. That section was repealed and replaced by section 909 in 1968. (Stats. 1968, ch. 385.) While there was some slight change in the language, the substance of former Code of Civil Procedure section 956a and the present Code of Civil Procedure section 909 is identical.

supplemental affidavits presented after the court has ruled upon the motion (see *Drinkhouse* v. *Van Ness* (1927) 202 Cal. 359, 369 [260 P. 869]; *Wm. P. White Estate Co.* v. *Superior Ct.* (1934) 3 Cal.App.2d 164 [39 P.2d 275]) or affidavits filed in violation of the time limitation (Code Civ. Proc., § 658; *Bakurjian* v. *Pugh* (1935) 4 Cal.App.2d 450, 452 [41 P.2d 175]) or receive oral evidence in support of the motion (*Cembrook* v. *Sterling Drug Inc., supra,* 231 Cal.App.2d at pp. 66-68), and the trial court must rule on the motion within the time limit specified in Code of Civil Procedure section 660.

To construe the authority of this court to take evidence and make findings pursuant to Code of Civil Procedure section 909 as authorizing this court to receive affidavits and take evidence supplementing information presented to the trial court on a motion for a new trial would, in our view, be equivalent to creating by judicial fiat a proceeding equivalent to a motion for a new trial in an appellate court.

We have concluded that Code of Civil Procedure section 909 was not intended to permit the appellate courts to entertain what is equivalent to a motion for a new trial or do more than the trial court itself could have done (see *Hamasaki* v. *Flotho* (1952) 39 Cal.2d 602, 608 [248 P.2d 910]) under the statutory strictures imposed upon motion for new trial proceedings in the trial court. (See *Estate of Schluttig* (1950) 36 Cal.2d 416, 423 [224 P.2d 695]; *Bloomquist* v. *Haley* (1928) 204 Cal. 258 [268 P. 367]; *Crespo* v. *Cook, supra,* 168 Cal.App.2d at p. 363.)

Accordingly, the affidavits submitted by Edison and admitted into evidence by this court are stricken, the State's objections to the oral evidence presented at the hearing on March 5, 1976, are sustained and the evidence is disallowed. It follows that our original judgment reversing the order granting the motion for a new trial must be reaffirmed.

## DAMAGES

 Edison contends the trial court committed reversible error in giving an instruction which in effect directed the jury to fix the suppression expenses incurred at $21,584.19[6] rather than Edison's

---

[6]The court instructed: "If, under the court's instructions, you find that the plaintiff is entitled to a verdict, you must then award plaintiff its costs incurred in fighting the fire in question in the amount of $21,584.19."

requested instruction which committed to the jury the responsibility for fixing the amount of the reasonable and necessary suppression expenses.[7]

■ Preliminarily, we reject State's argument that because the liability for fire suppression expenses is a liability created by statute, the amount of such expenses is assessable irrespective of its reasonableness under Civil Code section 3359[8] or proof that such expenses were not actually spent on the particular fire.

There is, of course, no question that an action to recover fire suppression costs is a creature of statute (*People* v. *Wilson* (1966) 240 Cal.App.2d 574, 576-577 [49 Cal.Rptr. 792]) and that the amount when determined is, by the express terms of Health and Safety Code section 13009 (see fn. 1, *ante*), collectible in the same manner as in the case of an obligation under contract, express or implied. Thus, as to procedural matters such as venue and the statute of limitations, the statutes pertaining to actions upon a contract control. (*People* v. *Zegras* (1946) 29 Cal.2d 67, 68-69 [172 P.2d 883]; *People* v. *Wilson, supra,* 240 Cal.App.2d at p. 578.) However, the statute gives no direction as to whether contract or tort principles are applicable in fixing the amount of such expenses nor as to the manner in which "expenses" constituting the statutory debt are to be determined. (See *Globe Indem. Co.* v. *State of California* (1974) 43 Cal.App.3d 745, 749 [118 Cal.Rptr. 75].) For the reasons about to be stated, we have concluded that, whatever the theory underlying the obligation, principles of the law and damages and basic fairness demand that the person or entity being charged for such suppression expenses be given the opportunity to challenge whether such expenses were reasonably incurred or expended in suppression of the fire. It is therefore unnecessary to expound further upon the theoretical basis of the damage award.

---

[7]That instruction, which was rejected by the court, read: "If, under the court's instructions, you find that plaintiff is entitled to a verdict against defendant, you must then award plaintiff damages in an amount that will reasonably compensate it for each of the following elements of claimed harm or loss, provided you find it was suffered by it and proximately caused by the act or omission upon which you base your finding of liability. The amount of such award shall include: the reasonable and necessary costs incurred by plaintiff in fighting the fire in question."

[8]Civil Code section 3359 provides: "Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered."

It is clear that section 13009 (see fn. 1, *ante*) is a compensatory statute for expenses incurred in fighting fires and is not intended to exact pecuniary punishment or a penalty against a person or entity liable under the statute. (*Gould* v. *Madonna* (1970) 5 Cal.App.3d 404, 407-408 [85 Cal.Rptr. 457]; 23 Cal.Jur.3d, Damages, § 3, p. 12.) Consequently, the general statutory provisions and case law governing compensatory damages must be read in conjunction with section 13009 in measuring the "expenses" incurred in fighting fires.

The law of compensatory damages is based on the principle that a person who is injured shall be justly compensated therefor to a degree commensurate with the injury sustained by him. (Civ. Code, §§ 3281, 3282; *Avery* v. *Fredericksen and Westbrook* (1944) 67 Cal.App.2d 334, 336-337 [154 P.2d 41]; 23 Cal.Jur.3d, Damages, § 12, p. 23.) Civil Code section 3359 (fn. 8, *ante*), which is not limited to causes of action in either tort or contract, provides that an award of compensatory damages must in every instance be reasonable and that whenever an obligation of any kind apparently creates, contrary to substantial justice, a right to recover unconscionable and grossly oppressive damages, no more than reasonable damages can be recovered by virtue of that obligation. (See 23 Cal.Jur.3d, Damages, § 15, p. 25.)

State cites and relies upon the case of *Guardianship of Gridley* (1973) 32 Cal.App.3d 1053 [108 Cal.Rptr. 200] as standing for a different conclusion. However, that case is inapposite to the facts herein. Here Edison is not attempting to measure State's firefighting efforts in relation to any other firefighting unit, public or private. *Gridley* tried to show that the charges of the state hospital were excessive since they were more than private institutions would have charged. There is no such comparison attempted here. *Gridley* expressly stated that its ruling "does not mean that the estate . . . may be charged with expenses that were not properly incurred or determined, or that the department and the director are not accountable if an attempt is made to impose charges not warranted by the statutory mandate." (*Guardianship of Gridley, supra,* at p. 1063.)

Contrary to State's contention, we perceive in section 13009 no overriding or broad public purpose which modifies or supersedes the aforementioned well-settled principles of compensatory liability. The case of *County of Ventura* v. *So. Cal. Edison Co.* (1948) 85 Cal.App.2d 529 [193 P.2d 512], relied upon by State, merely upheld the constitutionality of the fire liability law and does not militate against the conclusion herein.

Accordingly, in the light of the aforementioned principles, the proper measure for determining "expense" incurred for fighting fires pursuant to section 13009 requires that (1) the expense claimed be incurred in fighting the fire, (2) that said expense be the proximate result of defendant's wrongful conduct, and (3) that said expense be reasonably incurred.

In the case at bench, Edison's special instruction (see fn. 7, *ante*) which was refused by the court properly embodied the aforementioned damage elements. Consequently, unless the evidence established these elements as a matter of law, it was reversible error not to have submitted these factual issues to the jury. (Evid. Code, § 312, subd. (b); *Skoglie* v. *Crumley* (1972) 26 Cal.App.3d 294, 298 [103 Cal.Rptr. 205]; *Stilson* v. *Moulton-Niguel Water Dist.* (1971) 21 Cal.App.3d 928, 936 [98 Cal.Rptr. 914]; *Dahl-Beck Electric Co.* v. *Rogge* (1969) 275 Cal.App.2d 893, 900 [80 Cal.Rptr. 440]; *Hardin* v. *Elvitsky* (1965) 232 Cal.App.2d 357, 373 [42 Cal.Rptr. 748].)

We proceed therefore to an analysis of the evidence on the issue of damages. The only evidence of the expense of fighting the fire expressed in a dollar amount was contained in a one-page document entitled "Fire Cost Report" offered by State and admitted into evidence as a business record pursuant to Evidence Code section 1271. This report summarizes the items of expense incurred in fighting the fire attributable to Edison and reflects the total expense to State as $21,548.19.

The foundation for the fire cost report was established through the testimony of witness Robert W. Ford, a state forester who at the time of his testimony and at least since 1973 had been assigned the duty of auditing final cost reports as one of his responsibilities. Mr. Ford had been with the state Division of Forestry for 32 years and had worked in multifarious field and office positions during his tenure. Ford testified that the fire cost report which had been prepared by another state forester in 1970 was audited by the witness in 1973. He indicated that the report is a compilation of activity cards which were maintained by members of the fire crew on various vehicles and subpurchase orders used to pay for various services or materials and other documents listing goods or services used in fighting the fire. These basic supporting documents and records were in court and available for use by either party but were not offered in evidence. Mr. Ford had no personal knowledge of the fire or of any of the matters appearing in the supporting documents.

Being satisfied that the cost report and foundation laid met the requirements of Evidence Code section 1271, the court properly admitted it into evidence as a business record. (See *Loper* v. *Morrison* (1944) 23 Cal.2d 600, 609 [145 P.2d 1]; *People* v. *Crosslin* (1967) 251 Cal.App.2d 968 [60 Cal.Rptr. 309] (cert. den., 390 U.S. 1006 [20 L.Ed.2d 106, 88 S.Ct. 1251]); *Gee* v. *Timineri* (1967) 248 Cal.App.2d 139 [56 Cal.Rptr. 211].)

■ Once admitted, the fire cost report became evidence of the facts therein stated and, unless rebutted or contradicted, was conclusive on the issue of the amount of expenses incurred and expended. Moreover, the expenses as reported in the fire cost report are some evidence of reasonable value and, in the absence of a showing to the contrary, are sufficient (see *Malinson* v. *Black* (1948) 83 Cal.App.2d 375, 379-380 [188 P.2d 788]; *Plonley* v. *Reser* (1960) 178 Cal.App.2d Supp. 935, 939 [3 Cal.Rptr. 551, 80 A.L.R.2d 911]) to satisfy State's burden to prove the elements of its damage with reasonable certainty. (*Walnut Creek Pipe Distributors, Inc.* v. *Gates Rubber Co.* (1964) 228 Cal.App.2d 810, 819 [39 Cal.Rptr. 767].)

■ Edison presented no witnesses or independent proof on the issue of the amount of the expenses but relied upon its cross-examination of Mr. Ford to raise an issue of fact as to whether the costs were incurred by State and the reasonableness of the amount. The fatal flaw in this procedure, however, was that Mr. Ford had absolutely no personal knowledge of the fire or the activities upon the basis of which the fire cost report and its supporting documentation were prepared.[9]

■ Except to the extent that an expert may give testimony not based on personal knowledge, under Evidence Code section 702, subdivision (a), which codifies a long-existing rule of evidence, the testimony of every witness, whether expert or lay, concerning facts to which he testifies is inadmissible unless he has personal knowledge of those facts. Nevertheless, by combining the content of the attorney's question (which, of course, is not evidence) with the answer, Edison, through cross-examination of Mr. Ford concerning the fire cost report and the expenses incurred, attempted to create a factual question on the issue of the reasonableness of the expenses. These questions went to lack of the

---

[9]In fact, when the fire cost report was first offered in evidence Edison objected on the ground that Ford did not have personal knowledge of the matters therein stated. State conceded this, and the court properly ruled that this fact did not affect the admissibility of the report as a business record.

witness' first-hand knowledge as to the employment of each fire crew member and each piece of equipment and questions which he could not answer, such as the reason for fire units being sent to the fire which were not used, unfamiliarity with the uses to which man-hours charged were put, the fact he could not testify that some of the suppression charges were not for firefighting on federal lands, whether contract aircraft was used on the fire in question or whether the subsistence charge was for fighting only state fires. It is plain enough that Mr. Ford's personal knowledge only extended to matters appearing on the face of the report and supporting documents, such as inaccuracies in the entries or calculations, and that he was incompetent to testify as to the matters covered in the questions asked because he lacked the personal knowledge required to answer. (Evid. Code, § 702, subd. (a).)

■ Accordingly, under the state of the evidence, we must conclude that the evidence on the issue of the amount of expenses was conclusively established by the fire cost report and there was no issue of fact on that issue to be resolved by the jury. (See *Stilson* v. *Moulton-Niguel Water Dist., supra,* 21 Cal.App.3d 928, 936; *Hardin* v. *Elvitsky, supra,* 232 Cal.App.2d 357, 373; *Gersick* v. *Shilling* (1950) 97 Cal.App.2d 641 [218 P.2d 583].) It follows that the court did not err in so instructing the jury.

The order granting a new trial is reversed, and the judgment is affirmed.

Franson, J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.