[Civ. No. 10465. Fourth Dist., Div. Two. Dec. 8, 1971.]

LEONARD STILSON, Plaintiff and Respondent, v.
MOULTON-NIGUEL WATER DISTRICT et al.,
Defendants and Appellants.

## COUNSEL

Rimel, Harvey & Logan, Rimel, Harvey & Helsing, Musick, Peeler & Garrett, Bruce E. Clark, Donald R. Gail and Lawrence E. Stickney for Defendants and Appellants.

Levy & Van Bourg, Everett E. Demler and Thomas S. Mulligan for Plaintiff and Respondent.

## OPINION

**GABBERT, J.**—In this action to recover for personal injuries, defendants appeal from a judgment in favor of plaintiff Stilson.

Plaintiff's employer, the American Bridge Division of the United States Steel Corporation (American Bridge), entered into a contract with appel-

lant Moulton-Niguel Water District (Moulton-Niguel) pursuant to which American Bridge was to construct large water tanks. Appellant Boyle Engineering Corp. (Boyle) served as supervising engineer for the project. During the course of construction of one of the tanks, plaintiff fell onto a steel floor from a 30-foot steel column on which he was working. Counsel for the defendants stipulated and the evidence produced during the trial shows that plaintiff's fall and consequent injuries were caused by the negligent manner in which American Bridge erected and supported the column on which plaintiff was working when the accident occurred.

Plaintiff's motion for a directed verdict against Moulton-Niguel and Boyle on the issue of liability was granted, and the jury returned a verdict, limited to the issue of damages of $312,875.23, after deduction of workmen's compensation benefits paid. Defendants' motion for a new trial was granted, limited to the issue of damages, unless plaintiff ·consented to a remittitur of $75,000; plaintiff so consented, and judgment for the sum of $237,875.23 was entered.

Plaintiff's motion for a directed verdict against Moulton-Niguel and Boyle on the issue of liability was based on several theories. Plaintiff contended that under the terms of the contract between American Bridge and the defendants, an agency relationship was created, as a matter of law, in which American Bridge was the agent of the defendants for the purpose of constructing the water tank in which plaintiff was injured. Accordingly, Moulton-Niguel and Boyle would incur liability for the stipulated negligence of their agent. Plaintiff further argued Moulton-Niguel and Boyle were his statutory employers (Lab. Code, § 6304), and violated their duties to provide a safe place of employment. (Lab. Code, § 6400 et seq.) Finally, plaintiff contended, even if an agency relation were not shown, Moulton-Niguel and Boyle bore the nondelegable duty to provide a safe place to work. (See *Van Arsdale* v. *Hollinger,* 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508]; Rest. 2d Torts, §§ 413, 416.) Although the trial judge apparently based his grant of plaintiff's motion for a directed verdict on the existence of an agency relationship between Moulton-Niguel and Boyle, and American Bridge, neither party requested specific findings, and the court made none. ■ Accordingly, if the directed verdict on the issue of liability may be sustained upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion. (*Davey* v. *Southern Pacific Co.,* 116 Cal. 325, 329 [48 P. 117]; *Snider* v. *Snider,* 200· Cal.App.2d 741, 756 [19 Cal.Rptr. 709]; 3 Witkin, Cal. Procedure (1954) § 76, p. 2234.) "It is judicial action and not judicial reasoning which is the subject of

review." ( *El Centro Grain Co.* v. *Bank of Italy, etc.,* 123 Cal.App. 564, 567 [11 P.2d 650].)

Appellants now appeal from the judgment on the single ground the directed verdict of liability against Moulton-Niguel and Boyle was error. As we shall discuss below, we conclude the record does not demonstrate, as a matter of law, an agency relationship existed between Moulton-Niguel and Boyle, and American Bridge, which would impose liability upon Moulton-Niguel and Boyle for the negligence of American Bridge. However, we are persuaded Moulton-Niguel was subject to the nondelegable duty to take special precautions to avoid the risk which led to Stilson's injuries. Since Moulton-Niguel failed to take such precautions, the directed verdict against it on the issue of liability was not erroneous. Finally, as we shall discuss, Boyle was subject to a duty to take special precautions to avoid the risk which led to Stilson's injury. Having breached that duty, the directed verdict against it on the issue of liability was not erroneous. The judgment should therefore be affirmed.

Appellants first contend the evidence is insufficient to support a directed verdict on the issue of liability because it does not, as a matter of law, show the existence of an agency or employer-employee relationship between Moulton-Niguel and Boyle, and American Bridge.

The contract between Moulton-Niguel and American Bridge contains the following provisions:

"SECTION 3—CONTROL OF THE WORK

A. Authority of the Engineer—The Engineer shall have general supervision and direction of the work and may be represented on the work by duly authorized Resident Engineer or Assistant Engineer and by inspectors. The Engineer shall decide any and all questions which may arise as to the quality of acceptability of materials furnished and work performed, and as to the manner of performance and rate of progress of the work; all questions as to the interpretation of the plans and specifications; and all questions as to the acceptable fulfillment of the Contract on the part of the Contractor.

. . . . . . . . . . . . . . . . .

F. Supervision by Contractor—The Contractor shall give efficient supervision to the work, using his best skill and attention, and shall provide and keep on the work at all times during its progress a competent superintendent and any necessary assistants, all of whom within reason shall be satisfactory

to the Engineer. All directions of the Engineer shall be given in writing and shall be received and obeyed by the superintendent in charge of the particular work, reference to which orders are given, and all such directions given to the superintendent shall be as binding as if given to the Contractor in person.

. . . . . . . . . . . . . . . . . . . .

H. . . . Any work done in the absence of the Engineer will be subject to rejection.

"SECTION 4—CONTROL OF MATERIALS

A. Samples and Tests—At the option of the Engineer, the source of supply of each of the materials shall be approved by the Engineer before delivery is started and before such material is used in the work . . .

"SECTION 5—PROSECUTION AND PROGRESS

. . . . . . . . . . . . . . . . . . . .

C. The Contractor shall employ none but competent foremen, laborers, and mechanics. If any subcontractor, superintendent, foreman, laborer, or other person employed on the work by the Contractor fails or refused [*sic*] to carry out the direction of the Engineer, or shall appear to the Engineer to be intemperate, incompetent, troublesome, or otherwise undesirable, he shall be discharged immediately on the requisition of the Engineer; and such person shall not again be employed on the work. . . ."

■ Appellants contend the contract was an insufficient basis to support a finding of an agency relationship between Moulton-Niguel and Boyle, and American Bridge. Appellants argue the contract granted Moulton-Niguel and Boyle only a general supervisory power over the work performed by American Bridge, and did not make them employers and principals of American Bridge.

■ A major consideration in determining an agency relationship exists is whether an employer retains a right of control over one whom he employs not only as to the result of work done but also as to the mode of accomplishing the work. (*McDonald* v. *Shell Oil Co.,* 44 Cal.2d 785, 788 [285 P.2d 902]; *Green* v. *Soule,* 145 Cal. 96, 99 [78 P. 337].) ■ Conversely, lack of control over the method and details of work tends to show an independent contractual relation rather than one of agency. (*Green* v. *Soule, supra; Rogers* v. *Whitson,* 228 Cal.App.2d 662, 671-672 [39 Cal. Rptr. 849].)

■ Nevertheless, the control which an owner may exert in his general supervisory power over work done at his behest may be a broad general power of supervision without changing a relationship from employer-independent contractor to one of agency. "[T]he owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect [citation], the right to stop the work [citation], the right to make suggestions or recommendations as to details of the work [citation], the right to prescribe alterations or deviations in the work [citation]—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship." (*McDonald* v. *Shell Oil Co., supra,* 44 Cal.2d 785, 790.)

■ The question whether an agency relationship has been created is normally a question of fact. (*Thayer* v. *Pacific Elec. Ry. Co.,* 55 Cal.2d 430, 438 [11 Cal.Rptr. 560, 360 P.2d 56]; *Hardin* v. *Elvitsky,* 232 Cal. App.2d 357, 373 [42 Cal.Rptr. 748]; *Housewright* v. *Pacific Far East Line, Inc.,* 229 Cal.App.2d 259, 265 [40 Cal.Rptr. 208].) Where a conflict in the evidence exists from which either conclusion could be reached as to the status of the parties, the question must be submitted to the jury. (*Dahl-Beck Electric Co.* v. *Rogge,* 275 Cal.App.2d 893, 900 [80 Cal.Rptr. 440]; *Hardin* v. *Elvitsky, supra,* 232 Cal.App.2d 357.) However, ". . . where but one inference can reasonably be drawn from the evidence . . . the question of whether one is an employee or an independent contractor becomes one of law for the court. [Citation.]" (*Burlingame* v. *Gray,* 22 Cal.2d 87, 100 [137 P.2d 9]; *Dahl-Beck Electric Co.* v. *Rogge, supra; Hardin* v. *Elvitsky, supra.*)

The factors to be considered in determining which relationship exists are numerous. ■ As noted above, the most important factor of an agency or employee relationship is the *right* to control the manner and means of accomplishing the result desired. (*City of Los Angeles* v. *Vaughn,* 55 Cal.2d 198, 201 [10 Cal.Rptr. 457, 358 P.2d 913]; *Green* v. *Soule, supra,* 145 Cal. 96, 99; *Housewright* v. *Pacific Far East Line, Inc., supra,* 229 Cal.App.2d 259, 266; *Hardin* v. *Elvitsky, supra,* 232 Cal.App. 2d 357.) "If the employer has the right to exercise complete control, an employer-employee relationship exists, whether or not that potential control is exercised with respect to all details." (*City of Los Angeles* v. *Vaughn, supra.*) ■ In this connection, the right to discharge an employee at will, without cause, is strong evidence of an employer's control. (*City of Los Angeles* v. *Vaughn, supra; Housewright* v. *Pacific Far East Line, Inc., supra.*) ■ Other factors to be considered are: (a) whether services

performed are a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required; (d) who supplies the instrumentalities, tools and the place of work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. (*Empire Star Mines Co. v. Cal. Emp. Com.,* 28 Cal.2d 33, 43-44 [168 P.2d 686]; *Housewright* v. *Pacific Far East Line, Inc., supra;. Sparks* v. *L. D. Folsom Co.,* 217 Cal.App.2d 279, 284-285 [31 Cal.Rptr. 640]; Rest.2d Agency, § 220.)

 Viewed in light of the principles discussed above, we cannot conclude as a matter of law the contract created an agency relationship between Moulton-Niguel and Boyle, and American Bridge. The contract must be interpreted, not only within the four corners of the instrument, but also by whatever extrinsic evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) Moreover, the actions of the parties after the contract is signed are relevant to the meaning of an ambiguous contract. (*Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744, 752-754 [8 Cal.Rptr. 427, 356 P.2d 171].)

 The record demonstrates substantial evidence as to the practice and conduct of the parties during the construction of the tank which would support the conclusion appellants retained only a general supervisory power necessary to insure the proper completion of the work, and not control of the means by which the work was to be accomplished. In addition, the apparently unlimited power to discharge, contained in Section 5C of the contract, would be susceptible to interpretation in light of normal practices in the construction industry in addition to statutory limitations against arbitrary discharge. Accordingly, the question whether the relationship between Moulton-Niguel and Boyle, and American Bridge, was one of agency was one on which reasonable minds could differ.[1] Thus the directed verdict on the issue of liability may not be sustained on the basis of agency.

The duties and liabilities of Moulton-Niguel were not, however, dictated solely by the general agency doctrine applying to employer and independent

---

[1]In view of our resolution of this issue, we need not resolve appellants' contention the trial court erred in failing to consider more than the written terms of the contract in deciding the legal import of the contract.

contractor. Where an employer hires a contractor to do work which the employer should recognize as likely to create a peculiar risk of physical harm to employees of the contractor unless special precautions are taken, the employer is subject to the nondelegable duty to take such precautions. (*Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245, 254-255; *Woolen* v. *Aerojet General Corp.,* 57 Cal.2d 407, 410-411 [20 Cal.Rptr. 12, 369 P.2d 708]; *Ferrel* v. *Safway Steel Scaffolds,* 57 Cal.2d 651, 655-656 [21 Cal.Rptr. 575, 371 P.2d 311]; *Widman* v. *Rossmoor Sanitation, Inc.,* 19 Cal.App.3d 734, 744-745 [97 Cal.Rptr. 52]; *Walker* v. *Capistrano Saddle Club,* 12 Cal.App.3d 894, 898-899 [90 Cal.Rptr. 912]; *Kirk* v. *Kemp Bros.,* 12 Cal.App.3d 136, 140 [90 Cal.Rptr. 553]; *Morehouse* v. *Taubman Co.,* 5 Cal.App.3d 548, 556 [85 Cal.Rptr. 308].) The duty and liability to an injured employee of an independent contractor may arise either under Restatement Second, Torts, section 413[2] (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407, 410-411) or section 416.[3] (*Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245, 253-254.) Section 413 makes the employer of the independent contractor directly liable for his own negligence, while section 416 imposes a vicarious liability for the negligence of the independent contractor.

Work of an independent contractor which has been characterized as creating a peculiar risk of physical harm absent special precautions includes eradicating white line markings on a street with the risk a motorist will injure a workman (*Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245), repairing a metal tank from the inside by forcing buckled metal outward with the risk that the metal would spring inward and injure a workman (*Ferrel* v. *Safway Steel Scaffolds, supra,* 57 Cal.2d 651), painting the inside of a tank with the risk of an explosion because of inadequate ventilation (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d 407), building a concrete floor and wall, without railings, to a height of 10 feet with the risk that a workman might fall or be pushed from the wall (*Morehouse* v. *Taubman Co., supra,* 5 Cal.App.3d 548), backing a loaded truck on a

---

[2] "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some manner for the taking of such precautions."

[3] "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

construction project without a warning device with the risk that a worker might be run down (*Anderson* v. *L. C. Smith Constr. Co.*, 276 Cal.App.2d 436 [81 Cal.Rptr. 73]), relining the inside of a tank with the risk of an explosion because of inadequate ventilation (*McDonald* v. *City of Oakland*, 233 Cal.App.2d 672 [43 Cal.Rptr. 799]), and digging a trench without adequate bracing with the risk that a workman might be injured by a cave-in (*Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d 734; *Delgado* v. *W. C. Garcia & Associates,* 212 Cal.App.2d 5 [27 Cal.Rptr. 613]).

 The facts pertaining to Stilson's injury are undisputed. Construction of the tank in which plaintiff was injured required the erection of several 30-foot steel columns and the placing of girders across the top of the columns. Neither the appellants nor American Bridge raised any scaffolding, safety net, safety lines or ladders, or did anything else for the protection of the workers who had to work at the top of the columns in order to properly connect the girders thereto. Such work clearly created, and was recognized by appellants' witnesses as creating a high degree of risk of physical harm to the employees of American Bridge. Under these circumstances, Moulton-Niguel clearly bore the nondelegable duty to take the precautions necessary to avoid the high degree of physical risk. (Rest.2d Torts, §§ 413 and 416.)

In light of the stipulation the negligence of American Bridge was the proximate cause of respondent's injuries, and in light of the uncontradicted testimony the work was hazardous and no safety precautions were taken to protect the workers working at the top of the steel columns, the directed verdict against Moulton-Niguel was not erroneous. Since a private person would be liable under these circumstances, so too is Moulton-Niguel as a public entity. (Gov. Code, § 815.4; *Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245.)[4]

 Finally, appellant Boyle argues that even if American Bridge was a hirer of an independent contractor and liable for respondent's injuries on the theory of nondelegable duties, Boyle as a consulting engineer was not a hirer and thus may not be found liable for respondent's injuries. This argument is without merit.

---

[4]Respondent also suggests the directed verdict against Moulton-Niguel was proper on the theories Moulton-Niguel was a statutory employer with the nondelegable duty to provide a safe place of employment (Lab. Code, §§ 6304, 6400 et seq.; *Alber* v. *Owens,* 66 Cal.2d 790 [59 Cal.Rptr. 117, 427 P.2d 781]), Restatement Second, Torts, section 414 applies as a matter of law, and Moulton-Niguel is liable for the negligence of American Bridge in constructing the tank as the possessor of land. (*O'Gan* v. *King City Joint Union High School Dist.,* 3 Cal.App.3d 641 [83 Cal.Rptr. 795].) In view of our disposition of the case, we need not reach these additional issues.

Boyle was not merely an agent or a contractor providing engineering and supervisory services to Moulton-Niguel. Before the injuries to respondent, and at a time when Moulton-Niguel operated no facilities and had no employees, Boyle was named as general manager of Moulton-Niguel, with one Donald Piersall specifically named as Boyle's representative on the Moulton-Niguel board of directors. Piersall, as Boyle's representative and as manager of Moulton-Niguel, advised the board on operations of the district, including advice pertaining to funding the district operations by issuing revenue bonds, to the letting of contracts, and to the hiring and firing of employees. Piersall testified the Moulton-Niguel board knew nothing about the building of facilities necessary for their operation, and he, acting both as manager of the district and as a Boyle engineer and representative, was in charge of the entire Moulton-Niguel Water District. As a result of its participation with Moulton-Niguel, Boyle shared in the control of the planning and the actual construction of the tank in which respondent was injured.

During the construction of the tank, Boyle administered the Moulton-Niguel contract, specifically concerning itself with progress payments, time and method of construction, and avoiding accidents, delays and injuries. Yet although the Boyle engineers understood the process of construction to be hazardous in the absence of precautions, and although the absence of safety lines, nets or scaffolding was known by the Boyle inspectors, Boyle failed to do anything toward providing respondent with a safe place to work.

Boyle unmistakably had control of the construction project, at least to the extent it could have required safety precautions. Hence the care required of Boyle must be measured by the hazard inherent in the construction work together with the ability to exercise supervisory control in order to prevent the construction work from causing injury to others. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 232 [282 P.2d 69].) The evidence is uncontradicted that Boyle failed to exercise its supervisory control with reasonable care to prevent known risks from causing injury. Therefore, Boyle is jointly and severally liable with Moulton-Niguel for respondent's injuries.[5]

---

[5]Respondent also suggests Boyle is liable for his injuries on the theories it was a joint venturer with Moulton-Niguel, it was a statutory employer (Lab. Code, § 6304), it was the "hirer-in-fact" of American Bridge and thus liable under Restatement Second, Torts, sections 413 and 416, and that, acting under public franchise, it was liable under Restatement Second, Torts, section 428.

The record does not show "an understanding as to the sharing of profits and losses"; neither Boyle nor Moulton-Niguel was to share in the profits or losses that the other might realize or suffer. No joint venture could therefore have existed.

The judgment is affirmed.

Kerrigan, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied January 6, 1972, and appellants' petition for a hearing by the Supreme Court was denied February 3, 1972.

---

(*Connor* v. *Great Western Sav. & Loan Assn.,* 69 Cal.2d 850, 863 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224].)

Whether Boyle was a statutory employer depends on the extent of control exercised, and is a factual determination for the trier of fact (*Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d 245, 257) as is the question whether Boyle was the "hirer-in-fact" of American Bridge. Restatement Second, Torts, section 428 is not applicable under the circumstances here demonstrated.