[No. C059754. Third Dist. July 20, 2010.]

CHRISTINA CONN, Plaintiff and Appellant, v.
WESTERN PLACER UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.
CHRISTINA CONN, Plaintiff and Appellant, v.
WESTERN PLACER UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part V of the Discussion.

1164

**COUNSEL**

Stephanie J. Finelli for Plaintiff and Appellant.

Jacobson, Hansen, Najarian & McQuillan and Leith B. Hansen for Defendants and Respondents.

**OPINION**

**BLEASE, Acting P. J.**—The Reporting by School Employees of Improper Governmental Activities Act (Act), a whistleblower act (Ed. Code, §§ 44110–44114),[1] in section 44113, makes school officials liable in damages

---

[1] A reference to a section is to the Education Code unless otherwise designated or implied from the context.

for interfering with the right of a schoolteacher to disclose evidence of improper governmental activities to an administrator or school board.

Plaintiff, Christina Conn, a second-year probationary teacher, was denied tenure when she was not reelected to a third year of employment.[2] She claims that her nonreelection was intended to interfere with her right to disclose "that certain students . . . were not being properly evaluated, assessed, and assigned appropriate special education services . . . ." (§ 44113, subd. (a.).) She sued defendants Western Placer Unified School District (the district), principal John Bliss, director of special education Tracy Murphy, director of personnel Robert Noyes, assistant superintendent Scott Leaman, and superintendent Roger Yohe, as the responsible parties, for damages pursuant to section 44113.[3]

The trial court entered a directed verdict (Code Civ. Proc., § 630) on Conn's interference cause of action on the view the individual defendants were management employees exempt from liability under section 44113.[4] It also ruled that they were entitled to immunity for discretionary acts under Government Code section 820.2.

Conn appeals, contending "[t]he court erred when it directed a verdict as to all defendants on [her] . . . section 44113 claim." She argues that the court "erred in holding that the individual defendants were immune from liability," and that she "presented sufficient evidence to prevail on her . . . section 44113 claim as to all defendants." We disagree.

■ Section 44113 is replete with nesting definitions that govern its application. It makes an "employee" liable in damages for using his or her "official authority" to interfere with the right of a schoolteacher to disclose to an official agent improper governmental activities. Although the term "employee" generally excludes "management employees" by incorporation of provisions of the Government Code (Ed. Code, § 44112, subd. (a); Gov. Code, § 3540.1, subd. (j)), it does not exclude " '[s]upervisory employee[s]' " who

---

[2] A probationary teacher becomes permanent if she is reelected to a teaching position for a third consecutive school year. (§ 44929.21, subd. (b).) "Prior to that point ' "[p]robationary teachers may be nonreelected without any showing of cause, without any statement of reasons, and without any right of appeal or administrative redress." ' [Citation.]" (*Sunnyvale Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168, 176 [89 Cal.Rptr.3d 546].) The district must notify a probationary teacher of its decision not to reelect "on or before March 15 of the employee's second complete consecutive school year of employment," otherwise the employee shall be deemed reelected. (§ 44929.21, subd. (b).)

[3] Conn also pursued a discrimination cause of action but the jury ruled against her on the claim and she did not appeal the verdict.

[4] The court implicitly found the district was not an employee and was also exempt from liability under that section.

exercise official authority over personnel actions. (Gov. Code, § 3540.1, subd. (m).) This dovetails with subdivision (b) of section 44113 that defines " 'official authority' " as including "personnel action[s]." Consequently, section 44113 makes persons who exercise supervisory authority over personnel actions liable when that authority is used to interfere with a schoolteacher's rights under the Act.

For these reasons we shall conclude the trial court erred in finding that defendants Bliss, Noyes, and Yohe were management employees exempt from liability under section 44113. To the extent they exercised "official authority" to recommend that Conn not be reelected to a third year of employment, they acted as " '[s]upervisory employee[s]' " (Gov. Code, § 3540.1, subd. (m)), and not as " '[m]anagement employee[s]' " (Gov. Code, § 3540.1, subd. (g)).

The trial court did not, however, err in finding that Murphy, Leaman, and the district were exempt from liability under section 44113. Murphy and Leaman were management employees who did not exercise supervisory authority over Conn, and the district plainly is not an employee.

■ We shall further conclude that Government Code section 820.2 is superseded by section 44113, which limits the discretion of supervisory authorities to act in violation of the Act, and thus the trial court erred in finding the individual defendants were entitled to immunity for discretionary acts under Government Code section 820.2.

Notwithstanding, because the matters Conn sought to disclose did not constitute "[i]mproper governmental activit[ies]" (§ 44112, subd. (c)), they did not constitute "[p]rotected disclosure[s]" (§ 44112, subd. (e)) subject to protection under the Act. Consequently, the trial court did not err in directing a verdict in defendants' favor on Conn's interference cause of action. (*Stilson v. Moulton-Niguel Water Dist.* (1971) 21 Cal.App.3d 928, 933 [98 Cal.Rptr. 914] ["if the directed verdict on the issue of liability may be sustained upon any theory of the law applicable to the case, it must be sustained [on appeal] regardless of the considerations which may have moved the trial court to its conclusion."].)

Finally, we need not consider Conn's assertion, made for the first time in her reply brief, that her complaint encompassed a claim under section 44114 and that the evidence adduced at trial supported such a claim. The record does not support the assertion that her complaint encompassed such a claim and she forfeited her right to assert the claim by failing to raise it in the trial court.

Accordingly, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2003, Conn was hired by the district to teach first grade at Carlin C. Coppin Elementary School (Coppin) during the 2003–2004 school year. The decision to hire Conn was made by the school's principal, John Bliss.

Early in her first year of teaching, Conn complained to Bliss about a child in her class who had severe behavioral issues that she felt compromised the safety of the class. When Bliss asked her what she thought should be done, she said she thought the child should be "evaluated for an emotional disturbance." She hesitated to give her opinion because when she referred students to special education in the past, "people" questioned her motives for doing so. The child was eventually removed from Conn's class and placed in "an emotionally disturbed classroom."

In November 2003, Conn was present when speech and language pathologist Wendy Meagher discussed the results of a screening done on a student in Conn's class. When Meagher indicated the child "passed the screening after she modified the question several times," Conn questioned whether one "can modify questions on the screening." Meagher became very agitated and said she felt Conn was "challenging" her. The parents, who also were present at the meeting, asked that their child receive a full assessment. A full assessment was completed, and it was determined the child qualified for speech and language services.

A few weeks later, Bliss told Conn that Meagher and/or the reading specialist, who was also present at the meeting, complained that Conn was "rude," "abrasive," and "confrontational" during the meeting. Conn responded that Meagher, not she, had acted unprofessionally during the meeting. She also said she felt that some members of the special education team, such as Meagher, were "very rude and condescending to [her] because [she] referred kids to them." Bliss explained that there were not enough speech and language pathologists to service the existing needs of the children and that the team had been told to "prioritize the needs." Conn responded that she would continue to refer children to the team regardless of "staff load."

In January 2004, Conn's three-year-old son Tristan was scheduled to begin receiving special education services through the district. An issue arose concerning transportation, and Conn telephoned the district's director of special education, Tracy Murphy. Murphy, who had previously met with Conn, said transportation was never discussed. An argument ensued, and Murphy hung up on Conn. Conn contacted Murphy's supervisor, assistant superintendent Scott Leaman, and told him what had occurred. Conn was "very, very angry and emotional" during her conversation with Leaman.

Following that incident, Murphy refused to speak to Conn without a third party present. When Conn told Bliss about her encounter with Murphy, he said he had already heard about it from Leaman. Conn told Bliss she thought it was odd that Leaman had contacted Bliss since Tristan was not a student at Coppin, and thus, the incident "ha[d] nothing to do with [her] profession as a teacher at [Coppin]." Bliss responded, "Well, I know that and you know that. But in the real world, we know that it does." Conn then questioned whether she was "not supposed to try and get the educational concerns of [her] kids fixed," and Bliss responded, "No. But you just need to be very careful when you're doing it, because it can affect your job."

On another occasion, Murphy stopped by Conn's classroom to tell her about an opening in a special education class for Conn's son Noah. When Conn asked when the class would be available, Murphy responded that she had already given Conn that information. When Conn indicated she did not like the way Murphy was speaking to her, Murphy said she would no longer speak to Conn in any setting and walked out. Bliss later advised Conn that he had been told about the incident. When Conn indicated that she was troubled that such issues were being brought to him, he said he understood "but that sometimes that is just how things . . . work . . . ."

At an individualized education program (IEP) meeting in mid-2004 concerning Conn's son Noah, Conn was advised that Noah was no longer eligible for special education services based on two prior IEP reports. Noah had not been "given an assessment to prove that he no longer needed services." At Conn's request, Noah was assessed, and it was determined that he was eligible for services. Thereafter, a second IEP was completed, which erroneously listed Noah's primary disability as "speech and language impairment." After Conn discovered the error, she asked to meet with Murphy to have the error corrected. Murphy said she would meet with Conn in the district office with the door open or in Bliss's office with Bliss present. A meeting was scheduled with Bliss, Murphy, and Conn for June 8, 2004. Murphy failed to show up for the meeting, and the IEP was not corrected until the following school year.

At some point, Conn and her husband met with Larry Mozes, a deputy superintendent at the Placer County Office of Education, to go over concerns they had regarding Noah's dismissal from special education as well as the "conduct" surrounding his dismissal. After the meeting, Mozes followed up by writing letters to the Conns and to Murphy. In essence, Mozes instructed them to "go back, do an IEP, make sure everybody is on the same page and proceed."[5]

---

[5] In her opening brief, Conn cites to three letters written by Mozes and sets forth their contents. Those letters, however, were not admitted into evidence at trial. Accordingly, we cannot consider them on appeal.

Some of Conn's colleagues told Bliss they were concerned about Conn's cell phone usage. Bliss discussed the issue with Conn, and she explained that she did not "normally [use her cell phone] for personal issues during teaching hours." On occasion, she used her cell phone for "instructional purposes," allowing children to call a parent if they "did something well in class that they normally didn't do or if a child did something they shouldn't have done . . . ." Bliss also advised Conn that he noticed that she arrived later than some of the other teachers and explained that while he did not have a problem with it, "if somebody else was looking for reasons to get rid of [her], . . . they could use it against [her]."

In December 2004, another child with severe behavioral issues was placed in Conn's classroom. Conn reported her concerns to Bliss and asked for a response plan because he was not always available. On January 19, 2005, Conn had to physically restrain the child to prevent him from stabbing another student with a pencil. When Conn told other teachers about the incident, someone suggested she file a safety grievance.

In December 2004 or January 2005, Leaman and the district's director of personnel, Robert Noyes, met with Bliss to discuss the issue of nonreelection generally and to remind Bliss of the need to adhere to certain timelines if he was not going to reelect someone. The conversation eventually turned to Conn. Leaman and Noyes mentioned that they had "heard that there's some concerns about [Conn]," but told Bliss that it was his decision whether to reelect her. Noyes heard from a couple of teachers and Murphy that Conn "sometimes . . . exhibited irrational behaviors in certain situations." In particular, he recalled someone stating that Conn had yelled during a meeting. Bliss advised Leaman and Noyes that he intended to reelect Conn.[6]

On January 21, 2005, Conn left the school grounds to attend a lunchtime event at her son's school. She knew she would not return until approximately 20 minutes after the lunch period ended and asked a fellow teacher to watch her class until she returned. She did not get Bliss's permission before leaving. Conn met with Bliss later that day to discuss a myriad of topics, including her leaving school grounds without permission. It was not uncommon for teachers to leave the school grounds during school hours, and Conn told Bliss that she believed she was being held to a higher standard than other people and that her advocacy for her kids was affecting her employment. During the meeting, which lasted between two and three hours, she became concerned for her job and asked Bliss if he planned not to reelect her. Bliss said, "no, he would never do that" but indicated that someone could go over his head. When Conn questioned why someone would do that "if their only interactions in regard to [her] were regarding [her] own children and [her] acting as

---

[6] Noyes's recollection was that Bliss had not yet decided whether to reelect Conn.

a parent," Bliss explained that "he was getting pressure from the district office in regard to [her] as an employee." Bliss also told Conn that she should work on arriving at school much earlier. Conn responded that other people arrived at the same time or later. Bliss indicated that he understood her position but explained that her arrival time could be used against her if someone was looking for reasons to get rid of her. Bliss also stated that superintendent Roger Yohe had called him because a parent of one of Conn's students threatened to sue the district because her child was not receiving special education services. During that meeting, Conn informed Bliss that someone had advised her to file a safety grievance regarding the student who attempted to stab another student with a pencil.

Several of Conn's colleagues confirmed that it was not uncommon for a teacher to leave school grounds on occasion and for another teacher to watch that teacher's class in his or her absence; however, each of them said it was first necessary to obtain the principal's permission.

On January 26, 2005, Conn received a memo from Bliss admonishing her for leaving school grounds on January 21, 2005. The memo was placed in Conn's personnel file. Bliss also notified Leaman and Noyes that he had changed his mind and was recommending that Conn not be reelected for the following school year. In doing so, Bliss focused on "the fact that [Conn] had left [her] class unattended . . . ." Bliss had no concerns regarding Conn's teaching or her students' achievement. Indeed, he gave Conn high marks for her teaching throughout her employment at Coppin.

Noyes informed Yohe that he intended to recommend to the school board that Conn not be reelected. Yohe concurred with Noyes's recommendation.

On February 24, 2005, Conn was notified that Noyes wanted to meet with her that day. Fearing that he was going to tell her she was not being reelected, Conn asked her union representative Sandra Beckman to sit in on the meeting. Conn and Beckman met with Noyes later that day, and Noyes told Conn she was not being reelected for the following school year. When Conn asked him why, he either refused or was unable to tell her.

Later that same day, Conn and Beckman met with Bliss. Bliss advised Conn that "[t]he district office decided to non-reelect you and that's all I can say . . . ."

On March 1, 2005, Noyes attended a closed session of the school board and recommended Conn not be reelected, and the board voted to accept the recommendation.

No one in administration would discuss Conn's nonreelection with her. Conn telephoned Yohe to discuss her nonreelection, but he did not return her

calls. Instead, on March 1, 2005, he wrote to Conn and advised her that "[n]on-reelection of district employees is considered a confidential personnel matter. The code does not provide for discussions or negotiations. . . . Under these circumstances I will not be meeting with you to discuss the issue."

On February 21, 2006, Conn sued the district, Bliss, Murphy, Noyes, Leaman, and Yohe for interfering with her right to make protected disclosures. In her complaint, she alleged that the individual defendants "directly and indirectly us[ed] [their] official authority and influence for the purpose of intimidating, threatening, coercing, commanding, and attempting to intimidate, threaten, coerce, and command [Conn] for the purpose of interfering with her right to disclose to an official agent that certain students of the District were not being properly evaluated, assessed, and assigned appropriate special education services . . . ." She further alleged that in committing those acts, the individual defendants were acting as agents of the district.

On October 11, 2006, Conn sued the district alone for associational discrimination and failure to prevent discrimination in violation of Government Code sections 12926 and 12940. The two actions were consolidated for all purposes and tried together.

At the close of evidence, defendants, through their counsel, moved for a directed verdict. In doing so, defendants observed that Conn's "cause of action under the whistle-blower statute" appeared to be premised on section 44113 because the language in the complaint and proposed jury instructions tracked the language of that section. Defendants then argued that section 44113 "only provides for a cause of action against employees of the school district," and that the district "is obviously not its own employee." Defendants also asserted that management employees were excluded from liability under section 44113, and that the individual defendants were management employees. Defendants further urged that Conn's "advocacy in and of itself is not a protected disclosure." Conn, who represented herself at trial, responded that it was for the jury to decide if there was enough evidence to support her claims, and that there was sufficient evidence for the jury to find in her favor. She did not address defendants' argument regarding the scope of section 44113, nor did she dispute defendants' observation that her "whistle-blower" cause of action was premised on that section.

The trial court granted a directed verdict in defendants' favor on the interference cause of action. The court found, among other things, that section 44113, subdivision (a) imposes liability on "employees," and that management employees are not "employees" under that section. Because it concluded the individual defendants were management employees, it held they were exempt from liability under section 44113. The court implicitly found

the district was not an employee under section 44113, and thus, was exempt from liability under that section. The court further concluded that the individual defendants were entitled to discretionary acts immunity under Government Code section 820.2. The jury ruled against Conn on her discrimination causes of action.

## DISCUSSION

### I

### Conn Was Not Required to Proceed by Writ of Administrative Mandate

As a preliminary matter, we reject defendants' assertion that the district's decision not to reelect Conn was "reviewable by a writ of mandate, not by a jury in a tort action."

■ The remedy provided by section 44113 is "an action for civil damages brought against the employee by the offended party." (§ 44113, subd. (d).) That is the remedy sought by Conn, who does not seek relief by way of mandate.[7]

Accordingly, Code of Civil Procedure section 1094.5 does not apply, and Conn was not required to proceed by writ of administrative mandate in the trial court.

### II

### Defendants Bliss, Noyes, and Yohe Are Not Exempt from Liability

On appeal from a judgment on a directed verdict, we view the evidence in the light most favorable to the appellant. All conflicts must be resolved and inferences drawn in the appellant's favor. If there is substantial evidence to support the appellant's claim, and if the state of the law also supports that claim, we must reverse the judgment. (*Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 895 [102 Cal.Rptr.2d 502].)

---

[7] The parties have not tendered and we do not consider whether the remedies for violation of section 44113 include mandatory or injunctive relief. Because Conn does not assert that the remedy by civil action is inadequate, there is no reason to address whether "traditional mandamus" (Code Civ. Proc., § 1085) is available. (Code Civ. Proc., § 1086.)

Conn contends the trial "court erred when it directed a verdict as to all defendants on [her] . . . section 44113 claim." She claims the trial court's finding that defendants were not employees within the meaning of the Act and thus exempt from liability under section 44113, is inconsistent with the Legislature's intent of encouraging school employees to disclose improper governmental activities without fear of reprisal. According to Conn, "it simply makes no sense to preclude an employee who encounters retaliation *from the school district* from filing suit against that school district."

■ Conn's argument ignores the fact that an employee who encounters retaliation from a school district or its employees is not precluded from suing that school district. A school district is subject to liability under section 44114, subdivision (c), not section 44113.[8] As discussed, *post*, Conn has not asserted a claim under section 44114.

Section 44113 provides that "[a]n *employee* may not directly or indirectly use or attempt to use the official authority or influence of the employee for the purpose of intimidating, threatening, coercing, commanding, or attempting to intimidate, threaten, coerce, or command any person for the purpose of interfering with the right of that person to disclose to an official agent matters within the scope of this article." (Subd. (a), italics added.)

Section 44113 is replete with nested definitions which govern the application of the Act. For purposes of the Act, " 'Employee' means a public school employee as defined in subdivision (j) of Section 3540.1 of the Government Code." (§ 44112, subd. (a).) Government Code section 3540.1, subdivision (j) defines a " '[p]ublic school employee' " as "any *person* employed by any public school employer except persons elected by popular vote, persons appointed by the Governor of this state, *management employees*, and confidential employees." (Italics added.)

■ The district is not a person under subdivision (j) of Government Code section 3540.1, and thus is not an employee under the Act. As for the individual defendants, defendants argued, and the trial court found, they were management employees, and thus, not subject to liability under section 44113. The term " '[m]anagement employee' " is defined in subdivision (g) of

---

[8] Section 44114, subdivision (c) provides in pertinent part that "a person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a public school employee or applicant for employment with a public school employer for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party." (Italics added.) For purposes of the Act, the term "person" includes any individual, any state or local government, or any agency or instrumentality thereof. (§ 44112, subd. (d).)

Government Code section 3540.1 as "any employee in a position having significant responsibilities for formulating district policies or administering district programs."[9]

However, Government Code section 3540.1, subdivision (g) does not preclude a management employee from also acting as a supervisory employee.

■ Thus, subdivision (m) of Government Code section 3540.1 defines " '[s]upervisory employee' " as "any employee, *regardless of job description,*" having authority over specified personnel actions.[10] (Italics added.) The authority so specified encompasses the same authority made subject to liability under the Act, the "official authority" to take "any personnel action" respecting a teacher. (§ 44113, subd. (b).) The language is broad enough to encompass the nonreelection of a teacher for purposes prohibited by the Act.[11]

While it was undisputed that the individual defendants were management employees, as we shall explain the evidence adduced at trial showed that at least some of them were also supervisory employees. As noted, a supervisory employee is defined by the authority granted "regardless of job description . . . ." (Gov. Code, § 3540.1, subd. (m).) Thus, a management employee may also have authority over personnel actions and when acting pursuant to that authority is deemed a supervisory employee.

■ Unlike management employees, a supervisory employee is not exempt from the definition of employee in Government Code section 3540.1 and hence is not exempt from liability under section 44113. (§§ 44112, subd. (a), 44113, subds. (a) & (b); Gov. Code, § 3540.1, subd. (j).) A supervisory employee is an employee who has been delegated authority over personnel matters. Accordingly, we must determine in what capacity each of the individual defendants was acting for purposes of Conn's interference cause of action.

---

[9] Subdivision (g) of Government Code section 3540.1 further provides that management positions shall be designated by the public school employer.

[10] Subdivision (m) of Government Code section 3540.1 reads in full: "(m) 'Supervisory employee' means any employee, *regardless of job description,* having authority in the interest of the employer to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to assign work to and direct them, or to adjust their grievances, or effectively recommend that action, if, in connection with the foregoing functions, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment." (Italics added.)

[11] The nonreelection of a schoolteacher may occur to remove a teacher for failures in performance. It may not be used to accomplish a purpose prohibited by the Act. (§§ 44948.5, 44949, 44955.)

Conn contends the following acts were intended to interfere with her right to disclose problems with the district's special education services: Murphy's statements to Leaman concerning Conn's conduct; Leaman's statements to Bliss regarding the same; Bliss's comments to Conn that her actions as a parent could affect her job; Bliss's statement to Conn that "he was getting pressure from the district office in regard to [her] as an employee"; Bliss's statement to Conn that Yohe had telephoned him because a parent of a student in Conn's class had threatened to sue the district because her child was not receiving special education services; Bliss's memo admonishing Conn for leaving the school grounds; and the decision not to reelect Conn.

Bliss was Conn's direct supervisor, and the evidence adduced at trial showed that he was acting in his capacity as such in performing each of the actions cited by Conn in support of her claim that Bliss attempted to interfere with her right to make protected disclosures. With respect to Conn's nonreelection, Bliss recommended to Noyes that Conn not be reelected. Noyes agreed, and advised Yohe that he intended to recommend that Conn not be reelected. Yohe concurred and authorized Noyes to proceed. The school board later voted to accept Noyes's recommendation. Thus, Noyes and Yohe also acted as supervisory employees at least with respect to Conn's nonreelection. (Gov. Code, § 3540.1, subd. (m) [supervisory employees include those "having authority . . . to . . . discharge . . . or effectively recommend that action . . . ."].) Accordingly, Bliss, Noyes, and Yohe were employees under the Act for purposes of Conn's interference cause of action, and the trial court erred in concluding otherwise.

In contrast, there was no evidence Leaman or Murphy had any supervisory authority over Conn. Rather, the evidence adduced at trial showed that Leaman had only indirect responsibility for the "educational arm of the district," which included Conn. He had direct responsibility over two employees: his secretary and Murphy. It was in his capacity as Murphy's supervisor (not Conn's) that he learned about the incident between Conn and Murphy. Likewise, the evidence adduced at trial showed that Murphy had no authority whatsoever over Conn. Thus, Leaman and Murphy were not employees within the meaning of the Act, and therefore, were exempt from liability under section 44113. Accordingly, the trial court did not err in directing a verdict on the interference cause of action as to them.

### III

#### Violators of Section 44113 Do Not Have Immunity Under Government Code Section 820.2

Having concluded Bliss, Noyes, and Yohe were employees, and thus, not exempt from liability under section 44113, we next consider whether the trial

court erred in concluding they were entitled to immunity under Government Code section 820.2 for discretionary acts.

That section provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (Gov. Code, § 820.2.)

The district argues that section 44929.21 gives California school districts complete discretion when deciding whether to reelect probationary teachers to permanent, secured positions. It relieves them of any obligation to state a cause for their exercise of discretion. The district further argues that the purpose for this discretion is "that a probationary teacher's job security must take a back seat to a school board's need to provide the best possible tenured teachers for future generations of students."

However, the district does not argue that a district's supervisory employees have discretion under the Act to interfere with the right of a teacher to disclose evidence of improper governmental activities protected by the Act by recommending that the teacher not be reelected to employment for a succeeding year. And that is the crux of Conn's argument.

She argues that Education Code section 44113, which is narrower than Government Code section 820.2, falls within Government Code section 820.2's limiting language "[e]xcept as otherwise provided by statute . . . ." We agree. Section 44113 is such a statute.

Government Code section 820.2 provides for the discretionary immunity of the act or omission of a public employee only where "the act or omission was the result of the exercise of the discretion vested" in the employee. A supervisory employee has no discretion, vested or otherwise, under the Act to recommend the removal of a teacher in violation of section 44113. Thus section 44113 is a statute which provides "otherwise" than Government Code section 820.2.

In *Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1424–1425 [4 Cal.Rptr.2d 203] (*Shoemaker*), this court held that Government Code section 821.6, which grants immunity to public employees for "instituting or prosecuting any judicial or administrative proceeding within the scope of his employment," is abrogated by Government Code section 19683, a whistleblower statute that applies specifically to public employees. We explained that "[t]he coverage of [Government Code] sections 821.6 and 19683 overlaps where, as here, public employees are accused of using official authority to 'discourage, restrain, interfere with, coerce and discriminate against' another

public employee by means of a judicial or administrative proceeding," and held that "[b]ecause the scope and purposes of [Government Code] section 19683 are more narrow than those of [Government Code] section 821.6, the former prevails where the two are in conflict." (2 Cal.App.4th at pp. 1423–1424.) To hold otherwise "would immunize the most egregious conduct undertaken to discourage whistle-blowing" and render the right of the injured party to civil damages for such conduct illusory. (*Id.* at p. 1424.)

In contrast, in *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 986 [42 Cal.Rptr.2d 842, 897 P.2d 1320] (*Caldwell*), our Supreme Court held that the discretionary act immunity provided public employees under Government Code section 820.2 is not abrogated by the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) The court explained that "public employees are *immune* for their discretionary acts, even those which constitute breaches of actionable duty, unless a statute otherwise provides. . . . This . . . can only be achieved by a clear indication of legislative intent that statutory *immunity* is *withheld or withdrawn* in the particular case." (10 Cal.4th at p. 986.) In concluding FEHA does not meet that test, the court observed that FEHA "generally prohibits employment discrimination by both public and private 'employer[s]' and provides civil remedies when its provisions are violated. But even if those remedies extend to individuals, including public employees, as 'agents' or 'aiders and abetters' of culpable 'employer[s]' [citation], FEHA contains no indicia of an additional intent that individual public officials or employees may be sued despite a specific statutory immunity that would otherwise apply in a particular case." (10 Cal.4th at p. 986.)

In addressing our earlier decision in *Shoemaker*, the court acknowledged: "Insofar as such whistle-blower statutes focus in particular on those who act to suppress or punish revelations of fraud, corruption, or illegality in government business, the core statutory objectives might well be obviated by a conclusion that cover-up efforts by a public official are eligible for immunity. By their specific nature and purpose, such laws may indeed provide 'a clear indication of . . . intent' [citation] that the personal immunities of public employees are abrogated." (*Caldwell, supra*, 10 Cal.4th at p. 987, fn. 7.)

■ Like *Shoemaker*, this case involves a whistleblower statute that focuses in particular on those who act to suppress or punish revelations of improper governmental activity. (§ 44113, subd. (a).) Like the whistleblower statute at issue in *Shoemaker* and unlike FEHA, section 44113 applies exclusively to public employees, namely public school employees. (§§ 44112, subd. (a), 44113, subd. (a).) Thus, "the core statutory objectives" would be obviated by a conclusion that coverup efforts by public employees are eligible for immunity. (*Caldwell, supra*, 10 Cal.4th at p. 987, fn. 7.) Indeed,

"[r]ecognition of [Government Code] section [820.2] immunity for cases falling within section [44113] would largely emasculate the latter section and thereby frustrate the legislative purpose behind its enactment."[12] (*Shoemaker, supra*, 2 Cal.App.4th at p. 1425.) Accordingly, violators of section 44113 are not entitled to immunity under Government Code section 820.2.

## IV

### The Matters Conn Sought to Disclose Are Not Protected Disclosures Under the Act

Although we have concluded that the grounds upon which the trial court based its grant of defendants' motion for a directed verdict are infirm, at least as to three of the defendants, "if the directed verdict . . . may be sustained upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion. [Citations.] 'It is judicial action and not judicial reasoning which is the subject of review.' [Citation.]" (*Stilson v. Moulton-Niguel Water Dist., supra*, 21 Cal.App.3d at pp. 933–934.) As we shall explain, the directed verdict may be sustained on the theory, urged by defendants below, that the matters Conn sought to disclose do not constitute protected disclosures within the meaning of the Act.

As previously discussed, section 44113 prohibits public school employees from using their "official authority or influence" for the purpose of interfering with the right of "any person . . . to disclose to an official agent matters within the scope of this article." (§§ 44112, subd. (a), 44113, subd. (a).) The intent of the Act is to encourage school employees and other persons to disclose improper governmental activities. (§ 44111.) " 'Improper governmental activity' means an activity by a public school agency or by an employee that is undertaken in the performance of the employee's official duties, whether or not that activity is within the scope of his or her employment, and that meets either of the following descriptions: [¶] (1) The activity violates a state or federal law or regulation, including, but not limited to, corruption, malfeasance, bribery, theft of government property, fraudulent claims, fraud, coercion, conversion, malicious prosecution, misuse of government property, or willful omission to perform duty. [¶] (2) The activity is economically wasteful or involves gross misconduct, incompetency, or inefficiency." (§ 44112, subd. (c).) In addition, the Act defines a " '[p]rotected disclosure' " as "a good faith communication that discloses or demonstrates an intention to

---

[12] The Legislature's stated intent in enacting the Act is "that school employees and other persons disclose, to the extent not expressly prohibited by law, improper governmental activities." (§ 44111.)

disclose information that may evidence" either an improper governmental activity or "[a]ny condition that may significantly threaten the health or safety of employees or the public if the disclosure or intention to disclose was made for the purpose of remedying that condition." (§ 44112, subd. (e).)

As they did below, defendants argue that "Conn's advocacy did not disclose [any] improper governmental activity" and that her advocacy on behalf of special needs children in and of itself is not a protected disclosure. We agree.

In *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378 [37 Cal.Rptr.3d 113], a school principal sued a school district for whistleblower retaliation under Labor Code section 1102.5, subdivision (b), which prohibited employers from retaliating against employees " 'for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation.' " (134 Cal.App.4th at p. 1381.)[13] The principal based her claim on four disclosures, three of which are relevant here. (134 Cal.App.4th at p. 1381.) In one instance, the principal received complaints from female students that a male physical education teacher was peering into the girl's locker room, and she disclosed that information to her district supervisors for personnel action. (*Id.* at p. 1382.) The second relevant disclosure concerned an "off-color remark" made by a science teacher to a female student. The principal disclosed that information to her superiors for personnel action. (*Ibid.*) The third relevant disclosure involved the issue of school safety. (*Ibid.*) At various points in time, including after a student was assaulted on campus, the principal requested additional staff to keep the campus safe. (*Ibid.*) In affirming the trial court's finding that none of those disclosures constituted protected whistleblowing, we explained that the principal's complaints were made in the context of internal personnel or administrative matters, rather than in the context of legal violations. (*Id.* at pp. 1384–1385.) "The disclosures involving the two teachers do not amount to whistleblowing as a matter of law because, although the disclosures were made by a government employee . . . to a government agency . . . , the disclosures indisputably encompassed only the context of *internal personnel matters* involving a supervisor and her employee, rather than the disclosure of a legal violation." (*Ibid.*) Likewise, the principal's disclosures "about needing more staff for safety purposes . . . were made in an exclusively internal

---

[13] Labor Code section 1102.5 was subsequently amended and currently states in pertinent part: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." (Lab. Code, § 1102.5, subd. (b).)

administrative context. They do not show any belief on [the principal's] part that she was disclosing a violation of state or federal law in any sort of whistleblowing context . . . ." (*Id.* at p. 1385.) As we explained, to exalt these "disclosures with whistleblower status would create all sorts of mischief. Most damagingly, it would thrust the judiciary into micromanaging employment practices and create a legion of undeserving protected 'whistleblowers' arising from the routine workings and communications of the job site." (*Ibid.*)

 The same is true here. Conn's complaints about unruly first graders, the failure to perform an assessment before deciding to terminate her son's services, how a particular screening was performed, an error in her son's IEP, and the behavior of members of the special education team were done in the context of internal administrative or personnel actions, rather than in the context of legal violations. The evidence adduced at trial showed that in making her complaints Conn was attempting to secure special education services for her own children and certain students in her class, not "blow the whistle." Contrary to her assertion in her reply brief, there was no evidence "she was complaining that the District had a persistent and pervasive system of ignoring its special-education students and violating state statutes designed to protect these most vulnerable of its citizens." As in *Patten*, Conn's complaints were akin to internal personnel or administrative disclosures that were, at their core, disagreements about the provision of special education services to several children, including her own. Such complaints do not rise to the level of protected disclosures under the Act. Accordingly, the trial court did not err in granting a directed verdict in defendants' favor on Conn's interference cause of action.

## V

### Conn Failed to Preserve Her Challenges to the Trial Court's Evidentiary Rulings[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VI

### Conn Forfeited Any Claim Under Section 44114 by Failing to Raise It in the Trial Court

Finally, we need not consider Conn's assertion, made for the first time in her reply brief, that her complaint encompassed a claim under section 44114.

---

[*]See footnote, *ante*, page 1163.

(*Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 77 [99 Cal.Rptr.3d 97].) Besides failing to raise it in her opening brief, the assertion is not supported in the record and is inconsistent with representations made in her opening brief. In moving for a directed verdict, defendants observed that Conn's interference cause of action, which tracked the language of section 44113, appeared to be based upon that section, and argued that defendants were not employees as required under that section. At no point did Conn dispute defendants' characterization of her cause of action, indicate that it was also premised on section 44114, or seek to amend her complaint to conform to the evidence adduced at trial. By failing to do so, Conn forfeited any claim under section 44114. Furthermore, Conn's assertion that her complaint encompassed a claim under section 44114 conflicts with representations made in her opening brief that her interference cause of action was based on section 44113.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Raye, J., and Robie, J., concurred.

A petition for a rehearing was denied August 10, 2010, and the opinion was modified to read as printed above.